KENNEY, APPELLANT, *v.* BRIDGES, ET AL., RESPONDENTS.

No. 8885

Submitted May 12, 1949. Decided July 13, 1949.

208 Pac. (2d) 475

Messrs. Fitzgerald & Bodine, Mr. Ben E. Berg, Jr., Livingston, for appellant. Mr. Berg argued the cause orally.

Mr. Vilroy C. Miller, Livingston, for respondents. Mr. Miller argued the cause orally.

MR. JUSTICE ANGSTMAN:

Plaintiff, claiming to be the owner thereof, brought this action to quiet title to certain described city lots in Livingston.

Defendant Octavia A. Bridges, hereinafter referred to as defendant, claims ownership by adverse possession for the statutory period. No one else claims any interest in the lots. The court found in favor of defendant and entered judgment accordingly.

Plaintiff has appealed from the judgment.

The only issue presented by the appeal is whether the evidence was sufficient to establish title by adverse possession. The abstract of title which was introduced in evidence without objection shows that Judson L. Wicks was the owner of the lots in question in 1924. He and his wife conveyed by quitclaim deed to Charles Young and Alice Young on March 22, 1946, for the consideration of $25.00. Charles and Alice Young conveyed by quitclaim deed to Frank C. West on March 27, 1946.

West and wife conveyed to plaintiff by quitclaim deed March 27, 1946. On February 4, 1931, defendant obtained a sheriff's deed to the property by virtue of a sale under writ of execution issued in an action by John W. Bridges, plaintiff, against Carol Shinn, defendant. The sheriff's deed was filed for record February 11, 1931.

Ever since that time to and including 1947 defendant paid all the taxes on the land except for the year 1946. She offered to pay the 1946 taxes but was furnished the following statement from the county treasurer: "Feb. 26th, 1947. On this date, Octavia A. Bridges has tendered me the taxes for 1946 amount-

ing to $5.88 as of this date. I have refused to accept the taxes as they were paid Feb. 11th, 1947 by Floyd Kenney, who paid them in the name of Octavia A. Bridges but asked to have the receipts marked paid by Floyd Kenney. The lots stand in the name of Octavia A. Bridges on the 1946 tax roll. Kenyon Talcott, County Treasurer (signed)."

Defendant also paid special improvement district taxes in 1947. In 1931 defendant and her husband and father staked out the lots by placing wooden stakes at the corners of the lots. In July 1934 the stakes were replaced. They extended above the ground several inches and were perfectly visible. In 1943 the stakes were again replaced with new ones. Each year since defendant obtained the sheriff's deed she and her husband have raked the lots and cleaned them by removing papers and other materials which would be a fire menace and raked off rocks and other rubbish.

In the summers of 1931 and 1932 defendant leased the lots to Ole Zettervald for a miniature golf course. Defendant's son was to have the privilege of playing golf as the rental. In about 1938 she leased the lots for the purpose of a Legion baseball park along with adjacent lots. The lots were used for that purpose for four years. In 1946 Mr. Kinnick leased the lots on which to store lumber. He used them for that purpose for about 13 months. The city tried to lease them from defendant some time in the thirties for a skating rink but this she refused.

Representatives of the California Oil Company sought a five-year lease in the forties but this too she refused.

During all these years Judson L. Wicks has made no demand upon defendant for possession of the lots.

Defendent offered to show that plaintiff attempted several times before he obtained the deed to the property, to buy the lots from her but this evidence was excluded.

The court found there was adverse possession within the meaning of subdivision 3 of section 9020, R. C. M. 1935, which provides: "For the purpose of constituting an adverse possession by any person claiming a title founded upon a written instrument,

or a judgment or decree, land is deemed to have been possessed and occupied in the following cases: * * * 3. Where, although not inclosed, it has been used for the supply of fuel, or of fencing timber, either for the purpose of husbandry, or for pasturage, or for the ordinary use of the occupant. * * *''

Defendant contends that this result is sustained by the reasoning in the case of Whalen v. Smith, 183 Iowa 949, 167 N. W. 646, 647. In that case the court said: ''The testimony fairly tends to show that promptly upon making the purchase plaintiff went upon the property, including the seven-foot strip constituting one-half the vacated alley, cut the weeds and grass, set posts at the corners of the lot as thus enlarged, had it surveyed and staked, and later graded the level of the seven-foot strip down to the level of the lot generally. She did not build upon the property or occupy it as a home until about 2 years after she obtained the conveyance, but during the interim she was apparently caring for it and preparing it for the building improvement which she ultimately made. Appellants argue, and their defense of this branch of the plaintiff's claim is based upon the proposition, that until the building of the house on lot 9, at which time it is shown she caused earth to be taken from the alley and hauled or moved upon the lot, plaintiff did no act and exercised no control over the seven-foot strip now claimed by her which 'can possibly be construed as taking or holding adverse possession of any portion of the alley.' The point thus made is not supported by the record. To constitute adverse possession or to set in operation the statute of limitations does not necessarily require the claimant to live upon the land, or to inclose it with fences, or to stand guard at all times upon its borders to oppose the entry of trespassers or hostile claimants. It is enough if the person pleading the statute takes and maintains such possession and exercises such open dominion as ordinarily marks the conduct of owners in general in holding, managing, and caring for property of like nature and condition. It is manifest that the acts of ownership and dominion necessary to indicate adverse possession of a vacant lot need not and cannot be the same which

a court or jury might think essential with respect to a lot covered with valuable improvements, or upon which there is a place of residence. If one asserting ownership of a vacant lot goes upon it at reasonable intervals, marks its limits or corners with visible monuments, clears it of brush, grass, and weeds to the limits so indicated, and points it out as his property to his neighbors and friends, it constitutes adverse possession within the meaning of the law, and when continued without interruption for a period of 10 years, his title becomes unassailable. Measured by this rule, there is little room to doubt that plaintiff is entitled to the relief given her by the court below.''

We have held too that the use under subdivision 3 of section 9020 is governed by the character and quality of the property and the locality in which it is situated. Sullivan v. Neel, 105 Mont. 253, 73 Pac. (2d) 206. And see Grays Harbor Commercial Co. v. McCulloch, 113 Wash. 203, 193 Pac. 709.

Plaintiff relies upon the case of Day v. Steele, Utah, 184 Pac. (2d) 216, 217, which reaches the opposite conclusion on very similar facts. The facts there involved were recited by the court as follows: ''From the evidence introduced at the trial it appears that respondents after buying the property from the county depended upon the following acts of their agent John E. Steele, to prove that they took possession of said land and were holding it openly and adversely under a claim of right as against apepllant and all the world: (1) That they paid all the lawfully levied taxes. (2) That in the spring of 1937 their agent with the help of another person surveyed the lines of this property and put tie posts at its corners. (3) That for a few days in 1938 he grubbed greasewood brush from the land and also allowed someone to place a commercial sign at no rental on the southeast corner of lots 4 and 5 of this property and had the city put a water meter in the street in front of the property so it could be connected when needed. (4) That in 1939 their agent replaced some of the corner posts which had been destroyed by campers; granted permission to a carnival to use a small part of the property for about a week, also at no rental; and allowed

persons to haul dirt on the property to fill up excavations on it. (5) In 1940 a friend did some leveling of a part of the property and this same agent did some more grubbing of weeds for about a week. This agent also spent a few days each year trying to eradicate a weed called 'white top.' Their agent also allowed a friend who owned property east of this land to store junk on about thirty feet of this land also at no rental. (6) That in 1946 a small frame building was moved onto the property by this agent. There was also evidence that this agent walked over this property many times as did others and that it was often used for camping grounds by strangers without anyone's permission. The agent also testified that it had been their intention to build cabins on the property and some blueprints had been made but that nothing more had been done towards the project.''

In holding that the possession was not adverse the court said that respondents had failed to prove that their possession was ''of such a character as to give notice to the owner and the world that it was being held adversely and under claim of ownership.''

Plaintiff also relies upon Smith v. Chambers, 112 Wash. 600, 192 Pac. 891 and Madson v. Cohn, 122 Cal. App. 704, 10 Pac. (2d) 531. In the former case the dispute hinged upon the location of the boundary line between two lots, both parties having made some use of the disputed area. In the Madson case the court quoted from the case of Unger v. Mooney, 63 Cal. 586, 49 Am. Rep. 100, as follows: ''The adverse character of the possession must in every case be manifested to the owner. The owner must be notified in some way, that the possession is hostile to his claim, or the statute does not operate on his right'.'' [122 Cal. App. 704, 10 Pac. (2d) 532]. In that case the title owner during the period of claimed adverse possession was the one who was contesting the claim. Here so far as the record discloses Wicks, the title owner during the period of claimed adverse possession, may have admitted that he knew that the property was being held adversely.

The fact that the lots after 1931 were assessed in the name of defendant and not to Judson L. Wicks was sufficient notice

to Wicks that some one else was claiming an interest in the property.

It was sufficient to put a reasonable person upon inquiry. Compare section 8781, R. C. M. 1935. Inquiry would have disclosed the sheriff's deed on record. This should have suggested further inquiry.

We think the evidence was sufficient to make a prima facie showing of adverse possession. Wicks, the person as against whom the property was held adversely throughout the years, has made no complaint as to the sufficiency of the adverse possession. He was not called upon to testify as to whether he actually had notice of defendant's claim. The burden of proof was of course on defendant, Sec. 9018, R. C. M. 1935; Smith v. Whitney, 105 Mont. 523, 74 Pac. (2d) 450; Bearmouth Placer Co. v. Passerell, 73 Mont. 306, 236 Pac. 673, but we think a prima facie showing was made sufficient to sustain the trial court's conclusion.

The judgment is affirmed.

Mr. Chief Justice Adair and Associate Justices Freebourn, Metcalf and Bottomly, concur.