No. 01-658

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 99

RAY J. HABEL and HABEL,
BOWD & HABEL, a partnership,

Plaintiffs and Appellants,

v.

BARTON KENT JAMES and
CAROL BROWN JAMES,

Defendants and Respondents.

APPEAL FROM: District Court of the Eleventh Judicial District,
In and for the County of Flathead, Cause No. DV-99-270(B),
Honorable Katherine R. Curtis, Judge Presiding

COUNSEL OF RECORD:

For Appellants:

William E. Astle, Astle & Astle, Kalispell, Montana

For Respondents:

Stephen C. Berg, Johnson, Berg, McEvoy & Bostock, Kalispell, Montana

Submitted on Briefs: February 28, 2002

Decided: April 24, 2003

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Appellants Ray J. Habel and Habel, Bowd, & Habel, a partnership (Habel) appeal from the order of the Eleventh Judicial District Court, Flathead County, in favor of Respondents Barton James and Carol James (Jameses), determining that Jameses acquired a prescriptive easement on the Habel property for a dock and retaining wall.  We affirm.

¶2     The issue on appeal is whether the District Court erred in ruling, as a matter of law, that a non-possessory prescriptive easement existed for the dock and retaining wall, and not a possessory adverse possession of property enclosed by the dock and retaining wall.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     Habel owns real property in Flathead County at the north end of Flathead Lake. Jameses own real property contiguous to the Habel property, by virtue of the entire western boundary line of Jameses' property, about 100 feet in length, being contiguous to a portion of the eastern boundary line of the Habel property.  This common boundary, which constitutes the western end of Jameses' lot, runs roughly parallel to the shoreline of Flathead Lake.  Habel owns the strip of property between the western boundary of Jameses' lot and the Lake area.  This strip extends from the remaining portion of the Habel property.

¶4     Jameses purchased their property in 1978.  At the time, a man-made retaining wall, constructed of wood, existed westerly of and parallel to the Jameses' western boundary at a distance of approximately three to five feet from the boundary, near the shoreline.  The retaining wall was 78 feet long and extended generally from a point several feet west of the southwest corner of Jameses' lot in a northerly direction.  The Jameses' back yard extended

2

from their home to within a few feet of the wood retaining wall. The purpose of the wood retaining wall was to prevent erosion of the property by the waters of Flathead Lake. The wood wall was about two feet tall its entire length and approximately six to eight inches in width. The north and south boundaries of Jameses' property were generally marked by fences, which ended several feet East of the retaining wall. At the time the Jameses purchased the property, they assumed they owned all the property to the wood wall, and that all land to the west of the wood wall, toward the lake, was public domain, probably owned by the State of Montana. However, the wall and the strip of land between the wall and the Jameses' western boundary were located on property then owned by Habel's predecessors in title.

¶5 When the Jameses purchased their property, there was no dock. In 1979, they built a floating dock extending westerly from the wood wall a distance of approximately 65 feet in length, 6 feet wide, and located entirely on the Habel side of the common boundary line. The dock was generally used by the Jameses to access the lake for swimming, fishing, boating during high water, and as a walkway when the lake is at low pool. In 1983, the dock was converted to a non-floating, permanent, stationary dock constructed of wood with supporting beams embedded in the ground. The Jameses have routinely maintained and repaired the dock as needed.

¶6 In the spring of 1981, Habel's predecessor in interest, Jim Dockstader (Dockstader), told James that he (Dockstader) owned the property on which the dock was situated, as well as the strip of property east of the dock. Dockstader did not request the Jameses to cease

3

using or remove the dock. This conversation marked the first time Jameses understood that the dock was neither on their property nor property owned by the State of Montana, but was located on property owned by Dockstader. They also realized that the termination of the two fence lines east of the wood retaining wall suggested that the boundary between Jameses' property and Habel's property was an imaginary line between the ends of the fence lines, or at least east of the retaining wall.

¶7     By 1988, the wood retaining wall had deteriorated due to forces of nature and was being eroded. The Jameses decided to replace the wood wall with a concrete retaining wall. The concrete retaining wall was constructed in precisely the same place as the wood wall, except that its length is slightly over 99 feet, 21 feet longer than the wood wall. Concrete was used, as opposed to wood, because of its superior strength and durability.

¶8     In May 1994, Habel ordered a survey of the property, including the common boundary between the parties. The survey indicated that both the concrete retaining wall and the dock were located on Habel's property. In August 1994, Habel's attorney, James Bartlett (Bartlett), contacted the Jameses by letter. The letter defined Jameses' use of the dock and the concrete wall as permissive, and asked Jameses to acknowledge the permissive nature of their use. The Jameses took no action in response to this letter as they did not agree their use had been permissive. There was no request by or on behalf of Habel to remove or cease using the dock or concrete wall.

¶9     Bartlett again contacted the Jameses by letter in September 1997. This time, Habel purported to revoke permission for Jameses to use the dock and concrete wall, and further

4

directed that the dock be removed within 45 days. The dock and retaining wall were not removed. On June 2, 1999, Habel filed an action against the Jameses to quiet title on the property in question.

¶10 On August 3, 1999, the Jameses filed an answer and counterclaim alleging that they had acquired a prescriptive easement for the dock and retaining wall by adverse use for the statutory period. Habel, in defense to the counterclaim, asserted that Jameses' use of the dock and retaining wall was possessory in nature which stated a claim of adverse possession rather than prescriptive easement. Habel filed a motion to dismiss Jameses' counterclaim on August 19, 1999. The District Court denied Habel's motion.

¶11 Habel filed motions for summary judgment on the complaint and Jameses' counterclaim which were denied by the District Court. A non-jury trial was held on August 30, 2000, and the District Court conducted an on-site inspection of the parties' properties on September 18, 2000. The District Court entered its Findings of Fact, Conclusions of Law and Order on April 9, 2001, concluding that the Jameses had acquired a prescriptive easement on the Habel property for use of the dock and retaining wall. Habel appeals.

**STANDARD OF REVIEW**

¶12 We review a district court's findings of fact to ascertain whether they are clearly erroneous. *Brumit v. Lewis*, 2002 MT 346, ¶ 12, 313 Mont. 332, ¶ 12, 61 P.3d 138, ¶ 12. A finding is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or if our review of the record convinces us that a mistake has been committed. *Brumit*, ¶ 12. Our standard of review of a district court's

5

conclusion of law is whether the court's interpretation of the law is correct. *Armbrust v. York,* 2003 MT 36, ¶ 12, 314 Mont. 260, ¶ 12, 65 P.3d 239, ¶ 12.

## DISCUSSION

¶13 **Did the District Court err in ruling, as a matter of law, that a non-possessory prescriptive easement existed for the dock and retaining wall, and not a possessory adverse possession of property enclosed by the dock and retaining wall?**

¶14 An easement is a right which one person has to use the land of another for a specific purpose or a servitude imposed as a burden on land. *Burlingame v. Marjerrison* (1983), 204 Mont. 464, 469, 665 P.2d 1136, 1139. Easements may be acquired by express grant, reservation in a deed of the servient land, implied grant, or prescription. *Burlingame*, 204 Mont. at 469, 665 P.2d at 1139. By contrast, the doctrine of adverse possession refers to acquisition of a possessory interest in land and results in acquisition of title to the property. *Burlingame,* 204 Mont. at 470, 665 P.2d at 1139. Both prescriptive easements and title by adverse possession are established in a similar manner: the claimant must show use that is open, notorious, exclusive, adverse, continuous, and uninterrupted for the statutory five-year period. The party claiming adverse possession must also have paid the taxes on the property for the full statutory period. Section 70-19-411, MCA, and *Burlingame*, 204 Mont. at 470-71, 665 P.2d at 1139-40.

¶15 Neither party disputes that the Jameses' use of the Habel property has been open, notorious, exclusive, adverse, continuous, and uninterrupted for the statutory five-year period. Further, it is undisputed that Jameses have not paid taxes on any portion of the Habel

6

property. Rather, it is the character of Jameses' use of the property which is disputed. If the use is non-possessory, than an easement interest is at issue, and the Jameses have undisputably demonstrated all of the elements necessary to establish a prescriptive easement. On the other hand, if the use is possessory, then adverse possession of the property is at issue, and because Jameses have not paid taxes on the property, the claim must fail.

¶16     After receiving evidence and inspecting the properties, the District Court found that:

> The retaining wall and dock in this case do not mark boundaries or completely enclose any portion of [the disputed property]. The dock and retaining wall would not serve to keep anyone or anything either in or out of a portion of [the disputed property]. The area of land partially enclosed by the dock and retaining wall is not used or improved in any way by [the Jameses]. The dock is used to access the lake from [Jameses' land]. The purpose of the retaining wall is to prevent erosion. . . . [E]rosion prevention . . . is a use of the adjacent parcel, not an attempt to possess it. [Jameses'] are not seeking to possess any portion of [the disputed property] by constructing the retaining wall and dock. The dock and retaining wall are not of the nature and extent to constitute a possessory interest.

¶17     Section 70-19-410, MCA, provides:

> For the purpose of constituting an adverse possession by a person claiming title not founded upon a written instrument, judgment, or decree, land is deemed to have been possessed and occupied in the following cases only:
>         (1) where it has been protected by a substantial enclosure;
>         (2) where it has been usually cultivated or improved.

¶18     The District Court reasoned that § 70-19-410, MCA, "does not provide that the existence of a fixture on a parcel of land automatically constitutes possession. Rather, what must be determined in this case is whether the structures constitute a 'substantial enclosure,' or are improvements of such a nature as to show dominion over the property."

¶19 Habel takes issue with the District Court's conclusion that the Jameses established a prescriptive easement, and more particularly, with its determination that Jameses' use of the dock and retaining wall situated on Habel's property was non-possessory. Habel argues that the dock and retaining wall are "possessory uses," because physical improvements denote adverse possession, as a matter of law, and offers *Hyde v. Lawson* (1972), 94 Idaho 886, 499 P.2d 1242, in support of this proposition. In *Hyde,* the Idaho Supreme Court determined that a hedge row, shrubs, flower garden, and trees maintained along a common boundary line had the same effect, for adverse possession purposes, as a fence. Habel contends that the dock and retaining wall are permanent structures that clearly mark the boundaries of the land enclosed by these structures, and therefore, Jameses acquired a possessory interest in the land which is enclosed by the dock and retaining wall.

¶20 This Court has not previously interpreted the term "substantial enclosure" as used in § 70-19-410(1), MCA, except to hold that a fence enclosure complies with the statute. *See Swecker v. Dorn* (1979), 181 Mont. 436, 441, 593 P.2d 1055, 1058. In determining that the structures in this case do not constitute a "substantial enclosure," the District Court referenced the Idaho Supreme Court's holding in *Lindgren v. Martin* (1997), 130 Idaho 854, 949 P.2d 1061. The Court in *Lindgren* addressed an Idaho adverse possession statute which is identical to § 70-19-410, MCA, and ultimately concluded that the statute was satisfied by fencing of the property, similar to our holding in *Swecker*. *Lindgren* offered the following discussion of the "substantial enclosure" requirement:

> [T]he character of the inclosure may vary somewhat from case to case "so long as it satisfies what is usual under the circumstances and indicates clearly the boundaries of the adverse occupancy." [Citation omitted.] Adverse claimants must establish that they constructed or maintained an inclosure on the disputed parcel of land to indicate the extent of their claim.

*Lindgren*, 949 P.2d at 1065.

¶21 Section 70-19-410(1), MCA, does not specify what kind of structure will satisfy the requirement to "protect by substantial enclosure" in order to deem the property "possessed and occupied" for purposes of adverse possession. In *Swecker*, we concluded a party who had completely enclosed the property with fencing and placed a storage shed thereon had established a substantial enclosure. *Swecker*, 181 Mont. at 441, 593 P.2d at 1059. Fencing of the disputed property did not occur here. However, we can conclude from the above authority that a structure or fixture may constitute a "substantial enclosure" evidencing possession if the structure or fixture indicates the boundaries of the adverse occupancy in a manner which clearly demonstrates the extent of the use of the property.

¶22 The District Court found the land was only partially enclosed by the dock and retaining wall, and concluded that these structures did not establish a possessory use of the disputed property itself. On appeal, Habel has not challenged the District Court's factual findings, and our review of the record reveals that the findings are supported by substantial evidence and therefore, are not clearly erroneous.

¶23 The District Court's conclusions of law regarding the enclosure issue were also correct. Although the Jameses constructed a retaining wall along the shoreline to prevent erosion, they neither fully enclosed, nor otherwise indicated the remaining boundaries of, the

disputed property. Even Jameses' fences, which were constructed along Jameses' northern and southern property lines, perpendicular to the retaining wall and the shoreline, stopped short of entering the strip of property owned by Habel, and therefore, did not restrict access to the lake across Habel's land. Without more, we cannot conclude that the District Court erred in determining that Jameses' retaining wall and dock did not constitute a "substantial enclosure" which demonstrated the disputed property had been "possessed and occupied," as required by § 70-19-410(1), MCA. The Jameses' retaining wall protected Habel's property, and ultimately, Jameses' own property, from erosion, and the dock provided an enhanced lake access on Habel's property, limited purposes which distinguish this matter from the broad use of the entirety of the disputed property which occurred in *Hyde v. Lawson*, *supra*, relied upon by Habel.

¶24 Habel next asserts, pursuant to § 70-19-410(2), MCA, that Jameses possessed and occupied the disputed property by way of "cultivation or improvement." In support of this argument, Habel cites to language from our holding in *Kenney v. Bridges* (1949), 123 Mont. 95, 208 P.2d 475, wherein we stated:

> To constitute adverse possession . . . does not necessarily require the claimant to live upon the land, or to enclose it with fences, or to stand guard at all times upon its borders to oppose the entry of trespassers or hostile claimants. It is enough if the person . . . takes and maintains such possession and exercises such open domination as ordinarily marks the conduct of owners in general in holding, managing, and caring for property of like nature and condition. It is manifest that the acts of ownership and dominion necessary to indicate adverse possession of a vacant lot need not and cannot be the same which a court or jury might think essential with respect to a lot covered with valuable improvements or upon which there is a place of residence.

*Kenney*, 123 Mont. at 98-99, 208 P.2d at 476-77 (citing *Whalen v. Smith* (Iowa 1918), 167 N.W. 646, 647).

¶25    *Kenney* was decided under a predecessor statute which provided that "[f]or the purpose of constituting an adverse possession by any person claiming a title founded upon a written instrument, or a judgment or decree, land is deemed to have been possessed and occupied in the following cases: . . . 3. Where, although not inclosed, it has been used for the supply of fuel, or of fencing timber, either for the purpose of husbandry, or for pasturage, or for the ordinary use of the occupant." Section 9020(3), R.C.M. 1935. *Kenney* involved the possession of a vacant lot, which the claimant had obtained by Sheriff's deed following a sale under writ of execution. The claimant thereafter went upon the property, cut the weeds and grass, set posts at the corners of the lot, had it surveyed and staked, and graded the land level to the claimant's adjoining property. Two years after possessing the property, the claimant built on the land. Upon a challenge by the record owner of the property, the Court was faced with the question of whether the two-year period before claimant built on the property could be counted toward the time required for the claimant to establish adverse possession. The Court determined that the claimant's actions on the property prior to building constituted possession for that purpose.

¶26    However, we are not persuaded from an analysis of *Kenney* that the District Court has erred. There the claimant staked and used the entirety of the vacant lot in question. Even assuming, for sake of discussion, that the statutory differences are not determinative, this matter is distinguishable from *Kenney* because the Jameses neither cultivated nor improved

11

the entirety of the disputed property. The District Court found that Jameses had not "engaged in grazing, pasturing, cultivation, gardening, removal of soil, or any other use of this land." Their improvements to the property only provide an enhanced access to the lake and prevent erosion.

¶27 Finally, Habel argues that the dock and retaining wall are sufficient possession of the property to leave Habel with an "empty fee" to the disputed property, relying on this Court's decision in *Burlingame v. Marjerrison* (1983), 204 Mont. 464, 665 P.2d 1136. In *Burlingame*, Marjerrisons had fenced a five acre portion of Burlingame's property, and for over 40 years, had planted a garden, raised corn, harvested timber and grazed cattle on the parcel. They had not, however, paid the taxes, and thus, they claimed only a prescriptive easement for their grazing, timber and farming purposes. In ruling against Marjerrisons, this Court distinguished prescriptive easement and adverse possession, and held that Marjerrisons' complete possession of the disputed property negated their claim to a non-possessory prescriptive easement:

> An easement, however, is by definition a nonpossessory interest. Here, Marjerrisons held complete possession of the parcel for the statutory period. They did not merely impose a burden upon the Burlingame parcel for the benefit of a dominant tenement.
>
> . . . .
>
> Where a prescriptive right to a servitude has the effect of leaving the owner with an empty fee title, the situation is not one of prescriptive right in the form of an easement. It has ripened into a claim for adverse possession. . . . Here, Marjerrisons' use and occupancy of the land did not amount to acquisition of an easement that was merely appurtenant to the dominant tenement. It must rather be characterized as complete possession, dominion and use of the parcel

12

to the exclusion of Burlingames and their predecessors in interest. It takes on the aspect of a fee.

*Burlingame*, 204 Mont. at 471, 665 P.2d at 1140. Habel asserts that, similar to Marjerrisons' use in *Burlingame*, Jameses' use so dominates the subject property that it has taken on the aspect of a fee and cannot be considered as merely appurtenant.

¶28 The District Court disagreed with this argument, holding that:

The dock and retaining wall are not of the nature and extent to constitute a possessory interest. In no respect could it be said that construction of the retaining wall and dock . . . "ha[ve] the effect of leaving . . . [Habel] with an empty fee." The [Jameses'] use and occupancy cannot be characterized as "complete possession, dominion and use of the parcel to the exclusion of [Habel]." [Citations omitted.]

¶29 We agree with the District Court. *Burlingame* involved a claimant's expansive and exclusive use of the entirety of the land in question. The Marjerrisons planted a garden, grazed and watered their cattle, farmed corn, and harvested timber upon the entire five acre parcel, which they also fenced. Such use clearly constitutes complete possession or occupation of the land, as opposed to a mere burden on the land. Unlike *Burlingame*, a complete possession or occupation of the land is not present in this case. Jameses' construction and maintenance of a dock and retaining wall are limited uses consistent with a non-possessory interest, and constitute a burden upon the Habel property, not a complete possession or occupation. The claimant in *Burlingame* erected a fence and excluded Burlingame and all others from the parcel. As demonstrated herein, the Jameses' construction of the dock and retaining wall neither encloses the land nor prevents Habel and others from entering the property.

13

¶30    The judgment of the District Court is affirmed.


/S/ JIM RICE


We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ TERRY N. TRIEWEILER
/S/ JIM REGNIER