DA 07-0575

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 455N

FRANK and SALLY ZITO,

      Plaintiffs and Appellants,

    v.

DAVE HUSTON, his heirs and assigns;
HUSTON FAMILY LIVING TRUST a/k/a
HUSTON FAMILTY TRUST; BO PIERSON,
as Trustee of the HUSTON FAMILY LIVING TRUST
a/k/a HUSTON FAMILY TRUST; and JOHN
and/or MARY DOES 1-10,

      Defendants, Appellees and Cross-Appellants.

APPEAL FROM:    District Court of the Sixteenth Judicial District,
In and For the County of Garfield, Cause No. DV 2006-2873
Honorable David Cybulski, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

            Paula S. Saye-Dooper; Saye Law, PLLC; Billings, Montana

            Robert L. Stephens, Jr., Southside Law Center; Billings, Montana

      For Appellees and Cross-Appellants:

            Mark S. Hilario; Harper & Hilario, PLLP; Billings, Montana

Submitted on Briefs:  June 11, 2008

Decided:  December 31, 2008

Filed:

_____
                  Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2    Frank and Sally Zito ("the Zitos") appeal from the order of the Sixteenth Judicial District Court, Garfield County, denying an award of damages for claims addressing Dave and Kathryn Huston and the Huston Family Trust's (collectively "the Hustons") refusal to provide or defend access to property they sold the Zitos. The Hustons cross-appeal the District Court's denial of their motion for additional time to respond to the Zitos' discovery request. We affirm in part and reverse in part, remanding to the District Court for proceedings consistent with this Opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3    In the interest of brevity, we recite only those facts relevant to our holding. In 1996, the Zitos and Hustons began negotiating the purchase of 640 contiguous acres of the Hustons' property in the Missouri Breaks area of Garfield County. These negotiations came to fruition in 1998, when the Hustons executed a warranty deed conveying 40 acres to the Zitos on April 14, and a contract for deed conveying the remaining 600 acres on May 5. The Zitos' residence sits on the 40 acre portion of the 640 acre property. The Hustons retained all rights associated with grazing the 600 acre

2

portion of the Zitos' property for the duration of the Contract for Deed in exchange for upkeep of fences and payment of property taxes.

¶4 The Zitos, accompanied by Dave Huston, viewed the property on one occasion before they purchased it. To access the property, they traveled along a dirt road which Dave indicated was "[t]he only way in and the only way out." Throughout the course of the transaction, the Hustons were aware of the Zitos' intent to create a farmstead residence on the remote property. At the time the properties were conveyed, both parties believed that the Zitos would have continued access to the 640 acres purchased via the route by which they viewed the property.

¶5 The aforementioned route crossed two properties, one owned by Christo and Beth Pierce and the other by Stephen Negaard. Until November 6, 2002, the Zitos had unimpeded access to their property over the Pierce and Negaard properties (hereinafter "the Pierce/Negaard"). On this date, the Pierces blocked the Zitos' access to their property. The Zitos filed suit, asserting they had a prescriptive easement over the Pierce/Negaard, and were granted a temporary restraining order allowing them access during the litigation. Ultimately, the Zitos did not prevail, and were permanently prohibited from using the original access route.

¶6 During the Zitos' attempt to secure a prescriptive easement across the Pierce/Negaard, they notified the Hustons that, pursuant to the Contract for Deed, the Hustons were contractually obligated to either defend the access route across the Pierce/Negaard, or to provide alternate legal access to the Zitos' property. They sought both financial indemnification with respect to the significant legal fees accrued in their

3

attempt to secure a prescriptive easement, and direct assistance in obtaining alternate legal access to their property.

¶7     Since November of 2004, the Zitos have been using a longer alternate four wheel drive road to access their property, one to which they have no legal title. The road is primarily on Bureau of Land Management ("BLM") land, but crosses a small section of the Hustons' property en route to the Zitos' property. The Hustons granted the Zitos an easement to use the short section of the four wheel drive trail that crosses their property. However, while the BLM allows the Zitos permissive use of the road, it does not permit them to maintain it, nor has it granted the Zitos an easement. Essentially, the Zitos lack legal access to their property. Furthermore, the BLM road they are now using to access their property is significantly rougher than their original route. This alternate access has appreciably increased the hardships already inherent in accessing a remote location.

¶8     At some point during the course of the Zitos' prolonged attempts to gain legal access to their property, the previously amicable relationship between the parties deteriorated. The Zitos claim that several incidents and altercations with the Hustons over the BLM leases, fencing, and control of a water source caused them emotional distress. They also attribute emotional distress, pain and suffering to the difficulties they have faced as a result of the access situation.

¶9     On June 27, 2006, the Zitos filed a complaint against the Hustons alleging four counts: breach of warranty, breach of contract and the implied covenant of good faith and fair dealing, negligent misrepresentation, and actual malice.

4

¶10   The Zitos commenced discovery on August 10, serving their First Discovery Request upon the Hustons, including a Request for Admissions. Responses were due by September 12. For reasons not relevant to our Opinion, the Hustons did not respond. On October 27, the Zitos filed a Motion to Compel Discovery and Memorandum of Law in support of the motion, as well as a Notice of Defendant's Admissions. They also filed a Motion for Partial Summary Judgment based on those admissions. On December 8, the Hustons filed a Motion for Additional Time to answer the Zitos' discovery requests. The District Court denied the Hustons' motion and correspondingly recognized the Zitos' motion to recognize the Hustons' admissions pursuant to Rule 36(a). As a result, the court issued an order granting summary judgment on the Zitos' claims of breach of warranty, breach of contract, and malice, and set the matter for a hearing on the issue of damages.

¶11   The damage hearing lasted approximately two days, with the Zitos presenting witness testimony and exhibits without objection or significant contradiction by the Hustons. Toward the end of the damage hearing, the court engaged in a dialogue with Zitos' counsel regarding its concern that there were two entirely unrelated transactions between the Hustons and Zitos, creating two completely separate access issues. The court's disquiet arose because in its view, the Zitos' damages were attributable solely to the lack of residential access to the 40 acres conveyed by warranty deed, and under its interpretation there had been no access warranted under the Warranty Deed. Thus, it could discern no basis upon which to award damages. The court's focus was upon

interpretation of the two documents conveying property to the Zitos, with no mention of the remaining counts of the complaint.

¶12 The court's order reflected this singular focus, which ultimately formed the critical underpinning for its conclusions. In a conclusory order, the District Court determined that the Zitos were not entitled to legal access to their property under either the Contract for Deed or the Warranty Deed; and that since "appropriate" agricultural access to the 600 acre parcel had been provided via the BLM road, neither the breach of warranty nor breach of contract claims could support an award of damages due to a lack of legal, residential access. Because the court viewed the entirety of the Zitos' damages as related to residential access as opposed to agricultural access, it denied an award of damages based on those counts.

¶13 The court's focus on the breach of warranty and breach of contract claims left only a cursory discussion of the remaining counts of the complaint. In a perfunctory conclusion, the court determined the Zitos had not proven damages for breach of the covenant of good faith and fair dealing, negligent misrepresentation, or actual malice. It further concluded that the Zitos' emotional distress claims were "not well taken." Importantly, despite the conclusory nature of the court's findings and conclusions, it essentially abandoned the grant of summary judgment, addressing liability for each count of the complaint. This appeal followed.

**STANDARD OF REVIEW**

¶14 We review a district court's findings of fact under the clearly erroneous standard, its discretionary rulings for abuse of discretion, and its legal conclusions and mixed

6

questions of law and fact under a de novo standard. *Stanley v. Lemire*, 2006 MT 304, ¶ 26, 334 Mont. 489, ¶ 26, 148 P.3d 643, ¶ 26.

## ISSUES

¶15    We restate the dispositive issues on appeal:

¶16    I.  Did the District Court err in concluding that the Hustons' failure to provide an appropriate easement to the Zitos' property did not constitute a breach of contract?

¶17    II.  Did the District Court err in concluding that there had been no proof of damages attributable to the Zitos' negligent misrepresentation claim?

¶18    III.  Did the District Court err in concluding that there was no proof of damages attributable to the Zitos' claim of actual malice?

¶19    IV.  Did the District Court abuse its discretion by denying the Hustons' motion for additional time to respond to the Zitos' Request for Admissions?

## DISCUSSION

¶20    **I.  Did the District Court err in concluding that the Hustons' failure to provide an appropriate easement to the Zitos' property did not constitute a breach of contract?**

¶21    Of the 640 acres the Zitos purchased from the Hustons, 600 acres were conveyed under a Contract for Deed.  The provision of the Contract pertaining to access states as follows:  "In the event the existing access to the land be challenged, the sellers agree to defend the access, or obtain an appropriate easement across adjoining lands."  The District Court concluded that because the Hustons retained the grazing rights to the property for the duration of the Contract, the Zitos use of the 600 acres conveyed by the Contract was effectively confined to recreational use.  Therefore, the court reasoned that the BLM road was "appropriate" access under the Contract.  The court's view of the two land transactions between the parties as wholly separate was critical to its ultimate

7

conclusion that "appropriate" access under the Contract for Deed did not mean legal access. The District Court's interpretation of the Contract was a mixed question of law and fact which we review de novo. *Stanley*, ¶ 26. Therefore, the task before us is to determine whether the Hustons fulfilled their contractual obligation to the Zitos under the access provision of the Contract for Deed.

¶22    When interpreting a contract, our ultimate objective is to "ascertain the paramount and guiding intent of the parties" at it existed at the time of contracting, and to give effect to that mutual intention. *Watson v. Dundas*, 2006 MT 104, ¶ 22, 332 Mont. 164, ¶ 22, 136 P.3d 973, ¶ 22; § 28-3-301, MCA. "The language of a contract is to govern its interpretation if the language is clear and explicit . . . ." Section 28-3-401, MCA. However, "[i]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." Section 28-3-306(1), MCA.

¶23    Moreover, where, as here, we interpret "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, [they] are to be taken together." Section 28-3-203, MCA. Similarly, it is appropriate to reference the circumstances under which the contract was made, including the situation of the subject of the instrument and of the parties to it, as well as the matter to which it relates, so the court is placed in the position of those whose language it is to interpret. Sections 28-3-402, 1-4-102, MCA.

¶24    With these rules of interpretation in mind, we proceed to review the District Court's interpretation of the access provision of the Contract: "In the event the existing

8

access to the land be challenged, the sellers agree to defend the access, or obtain an appropriate easement across adjoining lands."

¶25 We conclude that the District Court committed reversible error when it determined that the aforementioned provision did not obligate the Hustons to provide legal access to the Zitos' property. In reaching this conclusion, we interpret each section of the disputed provision in turn, thus we first review the following language: "In the event the *existing access* to the land be challenged . . . ." (Emphasis added.) The balance of the Contract does not explain to what "existing access" the provision refers. However, at the time the Contract was executed, to the Zitos' knowledge, the *only* access to the 600 acres conveyed by the Contract was by way of the original access to their contiguous 40 acre parcel. Therefore, in light of the circumstances under which the Contract was made and the matter to which it relates, it is clear that the "existing access" to which the Contract refers was the route over the Pierce/Negaard, which the Zitos originally used to access the 40 acre property conveyed by warranty deed. *See* §§ 28-3-203, 28-3-402, 1-4-102, MCA.

¶26 The Zitos' existing access to their property over the Pierce/Negaard was challenged when the Pierces prevented them from using the original access route across his property. The Pierces' action triggered the Hustons' contractual duty to either "defend the access" or "obtain an appropriate easement across adjoining lands." The Hustons do not contend they defended the Zitos' original access route during the Zitos' attempt to secure title to a prescriptive easement over the Pierce/Negaard. Therefore, the

Hustons' contractual obligation to "obtain an appropriate easement across adjoining lands" was implicated.

¶27 The District Court's determination of the nature of the Hustons' obligation was based upon a mischaracterization of the contractual language at issue. In its ultimate interpretation of the operation of the access provision of the Contract, the court states that: "[t]he Contract does not require the Hustons to provide legal access but rather it requires them to provide 'appropriate access[sic]' to the contract acreage." By substituting the word "access" for "easement" in quoting the contractual provision at issue, the court misconstrued the effect of the contractual language. The language of the provision is "clear and explicit:" the Hustons were obligated to obtain an appropriate *easement* across adjoining lands. Section 28-3-401, MCA. Their obligation was not confined to providing appropriate *access*. The distinction is critical. An easement is more than a permissive use of another's property. It is a legal "right" long recognized both by statute and by this Court's jurisprudence. *See* § 70-17-101(4), MCA; *Blazer v. Wall*, 2008 MT 145, ¶ 24, 343 Mont. 173, ¶ 24, 183 P.3d 84, ¶ 24; *Taylor v. Mont. Power Co.*, 2002 MT 247, ¶ 11, 312 Mont. 134, ¶ 11, 58 P.3d 162, ¶ 11; *Habel v. James*, 2003 MT 99, ¶ 14, 315 Mont. 249, ¶ 14, 68 P.3d 743, ¶ 14; *Kuhlman v. Rivera*, 216 Mont. 353, 358, 701 P.2d 982, 985 (1985). The Hustons cannot, and do not, argue that they obtained an easement for the Zitos across adjoining lands. They are therefore in breach of their contractual obligation to obtain an easement for the benefit of the property they sold the Zitos. That the Zitos currently have what the District Court determined to be "appropriate" access to their property using the BLM road is beside the point.

10

¶28 In the final analysis, the language of the Contract explicitly obligated the Hustons to either defend the Zitos' access over the Pierce/Negaard, or to obtain an appropriate easement across lands adjoining the Zitos' property. The Hustons took neither action; therefore the extent of their breach encompasses both their failure to defend the Zitos' access and their failure to provide the Zitos with an appropriate easement. Correspondingly, the extent of the Hustons' liability encompasses all damages flowing from both their failure to defend the Zitos' access over the Pierce/Negaard, as well as their subsequent failure to provide an appropriate easement.[1] The District Court therefore erred in failing to award damages attributable to the Hustons' breach of their contractual obligations. Because legal fees are inherent in the contractual obligation to "defend the access," an award of damages should have included an award for attorneys' fees and other costs that arose as a result of the Hustons' failure to defend the Zitos' access. Since we conclude that the Zitos were entitled to legal access under the Contract, there is no need to address whether they were entitled to legal access under the Warranty Deed.

¶29 **II. Did the District Court err in concluding that there had been no proof of damages attributable to the Zitos' negligent misrepresentation claim?**

¶30 Where a district court's findings and conclusions are inherently inconsistent, reversal is warranted. *Parcell v. Meyers*, 214 Mont. 225, 227, 697 P.2d 92, 93 (1985). Moreover, a failure to award damages when the only evidence of record supports an

---

[1] The Zitos appear to argue on appeal that the District Court should have awarded damages for emotional distress arising out of the Hustons' breach of contract. However, emotional distress damages are not available in contract where, as here, the plaintiff has suffered no actual physical injury. *See* § 27-1-310, MCA.

11

award constitutes a decision not supported by substantial evidence which must be set aside. *See e.g. Renville v. Taylor*, 2000 MT 217, ¶ 24, 301 Mont. 99, ¶ 24, 7 P.3d 400, ¶ 24; *Thompson v. City of Bozeman*, 284 Mont. 440, 446, 945 P.2d 48, 52 (1997).

¶31 The District Court's findings and conclusions regarding the Zitos' claim of negligent misrepresentation were twofold: The court found that: "[w]hen [the Zitos] bought the 40 acre property they knew that the property had been accessed for 80 years for grazing using the route shown, a meandering dirt route going north from the county road to the 40 acres. There was no testimony that the route was represented as anything more than a prescriptive easement." This finding was the sole basis for the court's conclusion that "there has been no proof of damages for . . . negligent misrepresentation . . . ." We conclude that the court's finding that the Hustons misrepresented the existence of a prescriptive easement accessing the property is inconsistent with its conclusion that no damages flowed from that misrepresentation. This inconsistency warrants reversal. *Parcell*, 214 Mont. at 227, 697 P.2d at 93.

¶32 The District Court correctly found that the Hustons had misrepresented to the Zitos that they would have legal access to the 40 acre property upon which they planned to establish a farmstead, using the road that had been historically used to access the property. Although the court emphasized that the route over the Pierce/Negaard was represented as nothing more then a "prescriptive easement," the particular type of legal access represented is not a legally operative fact in the context of the Zitos' negligent misrepresentation claim. It is immaterial whether the represented legal access was prescriptive or otherwise. The relevant misrepresentation was that the Zitos would have

12

legal access to their property to establish a farmstead, using the access road by which they viewed the property—the only access route existing at the time of the purchase. To the extent the District Court determined an award of damages for negligent misrepresentation was precluded because the Hustons' misrepresentation was of a mere prescriptive easement, the court was in error.

¶33 The District Court compounded this error when, despite finding that the Hustons had misrepresented the existence of a particular easement, it concluded there had been no proof of damages caused by that misrepresentation. The court does not provide an explanation for this conclusion, and it is directly contradicted by the record.

¶34 The Zitos presented considerable testimony and evidence at the damage hearing which focused on damages suffered when they were denied use of the original access to their property. The damages were directly attributable to the Hustons' misrepresentation, and remained largely uncontroverted at the hearing. For example, Terry Rohrer, a certified appraiser, testified as to the difference in the respective value of the Zitos' 640 acre property with and without legal access. The Zitos also introduced, without objection, receipts for various expenses attributable to using the alternate access route. The District Court's conclusion that there was no proof of damages for the Zitos' negligent misrepresentation claim is therefore without support or basis in the record. The only evidence of record supported an award for damages flowing from the Hustons' negligent misrepresentation. The District Court's failure to award those damages constitutes a decision not supported by substantial evidence, which must be set aside. *See e.g., Renville*, ¶ 24; *Thompson*, 284 Mont. at 446, 945 P.2d at 52.

¶35 **III. Did the District Court err in concluding that there was no proof of damages attributable to the Zitos' claim of actual malice?**

¶36 At the damage hearing, the District Court heard testimony and received evidence regarding emotional distress damages the Zitos claimed were attributable to malicious conduct by the Hustons during the course of the controversy between the parties. Although the court previously granted summary judgment as to liability on this count of the Zitos' complaint, it ultimately concluded there were no damages attributable to any malicious or intentional acts perpetrated by the Hustons. The court acknowledged that the Zitos' situation was "miserable," but found that "most of their suffering relates to the remote location and the primitive road conditions" that are "the reality of a remote inaccessible location." In addressing the Zitos' claim for punitive damages, the court found that "Dave Huston's conduct did not ever rise to a level of deliberate disregard or intention to cause injury to the Zitos." The District Court concluded that the Zitos' claims for emotional distress were "not well taken." Taken together, the court's findings and conclusions reflect its determination that the Zitos' emotional distress was not a direct result of malicious, intentional conduct by the Hustons, thus neither damages for intentional infliction of emotional distress nor punitive damages were proper.

¶37 We have consistently held it within the province of the trier of fact to weigh the evidence and assess the credibility of witnesses. *State v. Meckler*, 2008 MT 277, ¶ 15, 345 Mont. 302, ¶ 15, 190 P.3d 1104, ¶ 15. We will not second-guess a district court's determinations in that regard. *Public Lands Access Ass'n. Inc. v. Jones*, 2004 MT 394, ¶ 26, 325 Mont. 236, ¶ 26, 104 P.3d 496, ¶ 26.

¶38 The Zitos argue that the court's determinations with respect to their claim of actual malice were based on its fundamental misinterpretation of the factual showing made at the damage hearing. In particular, the Zitos allege that the District Court misunderstood their ability to cope with a remote, agrarian setting; and that its determination that any emotional distress suffered by the Zitos was due to ill-preparedness was based on this mistaken interpretation of the evidence presented at the damage hearing. In contrast, the Hustons argue that the District Court did not award damages for malice because it determined that the Zitos' testimony regarding the emotional distress caused by the Hustons' allegedly malicious conduct was not credible.

¶39 An appropriately deferential review of the record supports the District Court's judgment. The court's conclusion that the Zitos' emotional distress was not the result of any malicious conduct by the Hustons was based on its interpretation of the evidence presented, the weight it assigned to the Zitos' evidence and testimony, and ultimately, the credibility of each witness. Because the District Court was in the best position to make such determinations, we give deference to its conclusions. *Public Lands Access Ass'n, Inc.*, ¶ 26; Meckler, ¶ 15.

¶40 **IV. Did the District Court abuse its discretion by denying the Hustons' motion for additional time to respond to the Zitos' Request for Admissions?**

¶41 The Hustons cross-appeal the District Court's denial of their motion for additional time to respond to the Zitos' discovery requests, arguing that by denying their motion, the court improperly imposed a "discovery sanction" upon them. We find the Hustons' cross-appeal moot. While the District Court purported to grant summary judgment on the

15

issue of liability based on facts deemed admitted as a result of the Hustons' failure to respond to the Zitos' discovery request, the grant of summary judgment on the issue of liability had no effect on the court's ultimate findings and conclusions in this case. In its findings and conclusions, the District Court addressed the issue of liability as to each count of the complaint, thereby rendering its "discovery sanction" inoperative. Because the District Court did not rely upon the Hustons' deemed admissions in its findings and conclusions, we decline to further address the Hustons' cross-appeal.

## CONCLUSION

¶42 We conclude that the Hustons breached the Contract for Deed when they failed to provide the Zitos with an appropriate easement. We further conclude that the record supports an award of damages flowing both from the breach of contract and from the Hustons' negligent misrepresentation. We affirm the District Court's conclusion that there was no proof of damages attributable to actual malice. In light of the above holdings, there is no need to reach the merits of the alleged breach of warranty, or of the issue on cross-appeal. We remand to the District Court for a determination of damages as to the counts of breach of contract and negligent misrepresentation.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ JAMES C. NELSON