No.05-110

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 191

GARY HALLENBERG,

      Plaintiff and Appellant,

   v.

GENERAL MILLS OPERATIONS, INC.,

      Defendant, Respondent and Cross-Appellant.

APPEAL FROM:    The District Court of the Ninth Judicial District,
                In and For the County of Glacier, Cause DV-2001-62,
                Honorable Marc G. Buyske, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

           Gary S. Deschenes, Deschenes & Sullivan, Great Falls, Montana

      For Respondent:

           K. Dale Schwanke, Jardine, Stephenson, Blewett & Weaver,
           Great Falls, Montana

Submitted on Briefs:  January 11, 2006

Decided:  August 16, 2006

Filed:

_____
                    Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Gary Hallenberg (Hallenberg) appeals the findings of fact, conclusions of law, and order entered in the Ninth Judicial District Court, Glacier County, ruling that General Mills Operations, Inc. (General Mills), was not liable for certain compensatory and punitive damages relating to Hallenberg's wheat farming operations. General Mills cross-appeals the determination of the compensatory damages that were awarded. We affirm in part, reverse in part, and remand for further proceedings.

¶2 We consider the following issues raised by Hallenberg:

¶3 Did the District Court err by failing to find General Mills guilty of actual fraud required for punitive damages?

¶4 Did the District Court err by failing to find General Mills guilty of actual malice required for punitive damages?

¶5 Did the District Court err by failing to award further compensatory damages?

¶6 We also consider several issues General Mills raises on cross-appeal:

¶7 Did the District Court err by concluding that Hallenberg suffered a sixteen bushel per acre loss in 1999?

¶8 Did the District Court err by allowing Hallenberg to present evidence after he had rested his case-in-chief?

¶9 Did the District Court err by finding the per bushel value of the lost production to be $3.60?

2

¶10    Did the District Court abuse its discretion by qualifying Richter as an expert or by awarding prejudgment interest?

BACKGROUND

¶11    Hallenberg operates a grain farm in Toole and Glacier Counties. On May 17, 1999, Hallenberg made arrangements with General Mills to clean and treat a load of wheat seed. Hallenberg parked his truck loaded with the seed at General Mills' facility, but instead of cleaning and treating the seed, General Mills inadvertently dumped it into a waste bin. General Mills personnel replaced the discarded seed with a variety of wheat seed called Fortuna, unaware that the dumped seed was a different variety, Westbread 936 ("936"). Though the two varieties are not readily distinguishable by the naked eye, the 936 seed produces a plant with a shorter stalk, earlier maturity date, greater resistance to shatter (loss of grain kernel due to wind or disturbance), and higher water usage rate than Fortuna. General Mills did not inform Hallenberg of the mishap or of the substituted seed, but it did bill him for the cleaning and treatment.

¶12    Hallenberg picked up his truckload of seed from General Mills, took it back to his farm, and placed the Fortuna seed in his seeder—which contained a partial load of 936—and proceeded to plant it. Three months later, Hallenberg noticed two different varieties of wheat were growing. Hallenberg contacted General Mills about the problem and for the first time learned of the dumping error and substitution of seed.

¶13    On May 3, 2001, Hallenberg filed a complaint in the District Court seeking compensatory and punitive damages for General Mills' actions. Following a bench trial,

3

the District Court issued findings of fact, conclusions of law, and an order on September 14, 2004, awarding Hallenberg $18,432 plus interest and costs to compensate for his 1999 crop losses caused by General Mills' negligent misrepresentation that the seed returned to Hallenberg was the same he had delivered. More specifically, the District Court found that Hallenberg planted the mixed seed on 320 acres and yielded only twenty bushels per acre from this land. The District Court also found Hallenberg's crop from nearby land seeded solely with 936 yielded thirty-six bushels per acre in 1999 and that difference in per acre yields between the two parcels was due to the mishap at General Mills. To arrive at the $18,432 figure, the District Court took the difference in yields per acre (sixteen bushes) between the two sections of land, multiplied it by 320 acres, and multiplied the product by a per bushel value of $3.60.

¶14   In addition, the District Court concluded that Hallenberg had failed to plead that General Mills acted with actual malice and that even if Hallenberg had pled actual malice, Hallenberg failed to meet the clear and convincing burden of proof. The District Court further concluded that because General Mills had committed negligent misrepresentation it could not have committed actual fraud, as the two torts are mutually exclusive. Accordingly, the District Court ruled that there was no basis for awarding punitive damages.

¶15   The District Court acknowledged that Hallenberg put on evidence purporting to show that planting the mixed seed caused a reduced yield in subsequent years resulting in lower government crop insurance payments to Hallenberg. However, the District Court

4

concluded that the evidence at trial was insufficient to quantify whatever loss of crop insurance proceeds Hallenberg may have experienced, and it awarded no damages for such loss.

## STANDARD OF REVIEW

¶16    In *Hidden Hollow Ranch v. Fields*, 2004 MT 153, ¶ 21, 321 Mont. 505, ¶ 21, 92 P.3d 1185, ¶ 21, we explained the standard of review for findings of fact and conclusions of law:

> We review a district court's findings of fact to ascertain whether they are clearly erroneous. *Habel v. James*, 2003 MT 99, ¶ 12, 315 Mont. 249, ¶ 12, 68 P.3d 743, ¶ 12. A finding is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or if our review of the record convinces us that a mistake has been committed. *Habel*, ¶ 12. Our standard of review of a district court's conclusion of law is whether the court's interpretation of the law is correct. *Habel*, ¶ 12.

¶17    "[W]e review a district court's evidentiary rulings to determine whether the court abused its discretion." *Travelers Indem. Co. v. Andersen*, 1999 MT 201, ¶ 32, 295 Mont. 438, ¶ 32, 983 P.2d 999, ¶ 32.

¶18    Whether the District Court properly awarded prejudgment interest is a question of law that we review to determine if the court's interpretation of the law is correct. *Ramsey v. Yellowstone Neurosurgical Assocs., P.C.*, 2005 MT 317, ¶ 18, 329 Mont. 489, ¶ 18, 125 P.3d 1091, ¶ 18.

## DISCUSSION

¶19    **Did the District Court err by failing to find General Mills guilty of actual fraud required for punitive damages?**

5

¶20    Sections 27-1-220 and -221, MCA, permit a trier of fact to impose punitive damages on a defendant in addition to compensatory damages. In considering whether to assess punitive damages for actual fraud, the District Court reasoned:

> A reading of the entirety of Section 27-1-221, MCA, leads to the conclusion the "actual fraud" required by that statute as a condition precedent to a punitive damage determination, anticipates proof of intent to harm by the false representation or concealment of material fact.

The District Court also cited *H-D Irrigating, Inc. v. Kimble Props., Inc.*, 2000 MT 212, 301 Mont. 34, 8 P.3d 95, and concluded that "the tort of negligent misrepresentation precludes a finding and conclusion actual fraud was committed." Hallenberg points out that *H-D Irrigating* in turn relied on *State ex rel. State Compensation Mut. Ins. Fund v. Berg* (1996), 279 Mont. 161, 927 P.2d 975, and he crafts his argument based upon this Court's analysis of fraud and constructive fraud in those two cases. However, the *H-D Irrigating* and *Berg* decisions addressed claims of fraud and constructive fraud as defined in Title 28, Chapter 2, Montana Code Annotated. Section 27-1-221(4), MCA, governing punitive damages, provides that the "contract definitions of fraud expressed in Title 28, Chapter 2, do not apply to proof of actual fraud under this section." At issue here is the distinctive definition of "actual fraud" under § 27-1-221(3), MCA, which applies only to the consideration of punitive damages and does not define—or affect the definition of—the underlying tort.[1]

---

[1] Section 27-1-221(3), MCA, provides as follows:
  A defendant is guilty of actual fraud if the defendant:
  (a) makes a representation with knowledge of its falsity; or

¶21 Due to the confusion exhibited by the District Court and Hallenberg regarding the differing definitions of "actual fraud," Hallenberg's argument plausibly could be construed such that he is contending that the District Court erred by not awarding him compensatory damages for actual fraud as defined in Title 28, Chapter 2, Montana Code Annotated. However, Hallenberg requests specific relief from this Court: "[I]t is respectfully requested that the Court reverse the trial Court's determination there was no actual fraud and direct the trial Court to determine punitive damages." This request indicates that Hallenberg's argument is directed to actual fraud as defined in Title 27, not Title 28, and we so construe it.

¶22 It is clear from the District Court's analysis that its interpretation and application of § 27-1-221, MCA, was erroneously influenced by case law relevant to the definitions of fraud and constructive fraud for claims brought under Title 28. Therefore, we remand to the District Court for reconsideration of Hallenberg's punitive damage claim based on actual fraud as defined in § 27-1-221, MCA.

¶23 **Did the District Court err by failing to find General Mills guilty of actual malice required for punitive damages?**

¶24 Section 27-1-221(2), MCA, defines "actual malice":

---

(b) conceals a material fact with the purpose of depriving the plaintiff of property or legal rights or otherwise causing injury.

"Actual fraud exists only when the plaintiff has a right to rely upon the representation of the defendant and suffers injury as a result of that reliance." Section 27-1-221(4), MCA. The above elements must be proven by clear and convincing evidence. Section 27-1-221(5), MCA.

7

A defendant is guilty of actual malice if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the plaintiff and:

(a) deliberately proceeds to act in conscious or intentional disregard of the high probability of injury to the plaintiff; or

(b) deliberately proceeds to act with indifference to the high probability of injury to the plaintiff.

¶25 Hallenberg contends that the District Court erred by concluding that he failed to plead actual malice. Additionally, Hallenberg argues that the District Court erred by concluding that "even if actual malice could be considered" the claim still fails.

¶26 In a pretrial order issued pursuant to Rule 16, M.R.Civ.P., Hallenberg's contentions included the following:

[D]ue to General Mills' malicious acts in purposely deceiving Hallenberg regarding the grain and then insisting that he pay for cleaning and treating grain that was not his, General Mills is liable to Hallenberg for an additional $500,000.00.

In addition, the pretrial order listed as "ISSUES OF FACT" the following: "Whether General Mills' actions constitute actual fraud or actual malice," and "What punitive damages should be awarded Hallenberg." Taken together, these portions of the pretrial order are sufficient to operate as a pleading of actual malice. *See Nentwig v. United Indus.* (1992), 256 Mont. 134, 138-40, 845 P.2d 99, 102-03 (pretrial orders should be liberally construed, and district court decisions in this context are reviewed for abuse of discretion).

¶27 However, our conclusion that Hallenberg pled actual malice is not fatal to the District Court's ultimate conclusion that Hallenberg failed to prove actual malice. The District Court found that "General Mills' personnel assumed Hallenberg was planting

8

Fortuna, as Fortuna was a commonly planted variety of spring wheat in the Toole and Glacier counties area," and this finding is supported by substantial credible evidence. Thus, General Mills acted under the presumption that *no injury* would result in its misrepresentation to Hallenberg that the seed he was going to plant was in fact the same seed he had delivered. Accordingly, we conclude that General Mills neither had knowledge of facts nor intentionally disregarded facts that created a high probability of injury to Hallenberg. The District Court did not err by failing to find General Mills guilty of actual malice.

¶28 **Did the District Court err by failing to award further compensatory damages?**

¶29 Hallenberg argues that he sustained damages beyond loss of crop production in 1999. Hallenberg contends that he should have been awarded damages for the following categories of losses incurred by General Mills' negligence: crop loss in 2000, including the loss from land that was fallow and allegedly became contaminated by the shelling of the Fortuna seed; the cost of additional seed in 2000; additional loans and interest incurred in 1999, 2000, 2001, and 2002; and tilling, spraying, and labor costs associated with cleaning up the 1999 damage.

¶30 Hallenberg correctly points out that the District Court's order simply did not address these claims to damages. Accordingly, we remand the cause for further proceedings on these matters.

9

¶31 Hallenberg also argues that the District Court erred by finding the evidence at trial to be insufficient to permit an award of damages for losses related to decreased crop insurance payments.

¶32 "Recovery of damages will not be denied, even if the mathematical precision of the figure is challenged, provided the evidence is sufficient to afford a reasonable basis for determining the specific amount awarded." *Cremer v. Cremer Rodeo Land & Livestock Co.* (1981), 192 Mont. 208, 214, 627 P.2d 1199, 1202. However, "[s]peculative damages not clearly ascertainable are not recoverable." *Albers v. Bar ZF Ranch* (1987), 229 Mont. 396, 404, 747 P.2d 1347, 1352.

¶33 Here, a review of the record reveals that there was evidence disputing the accuracy of Hallenberg's claims to losses of crop insurance payments. For example, General Mills put on evidence that tended to show that Hallenberg's crop insurance reports in years subsequent to 1999 contained errors. Because we "will not reweigh conflicting evidence or second guess the District Court's assessment of the credibility of the evidence," *In re M.T.*, 2002 MT 174, ¶ 30, 310 Mont. 506, ¶ 30, 51 P.3d 1141, ¶ 30, we conclude that the District Court did not err by refusing to award damages for lost crop insurance payments. *See In re Marriage of Mease*, 2004 MT 59, ¶ 42, 320 Mont. 229, ¶ 42, 92 P.3d 1148, ¶ 42 (district court properly denied request for damages because plaintiff failed to provide the court with proper proof).

¶34 **Did the District Court err by concluding that Hallenberg suffered a sixteen bushel per acre loss in 1999?**

¶35 General Mills makes alternative arguments regarding the bushel per acre loss Hallenberg suffered in 1999. First, General Mills argues that the evidence showed that the mixed seed was planted on roughly seventy-seven to one hundred acres, not 320 acres. Alternatively, General Mills argues that the yield from the unmixed acreage was lower than what the District Court concluded. General Mills asserts that Hallenberg's expert witness, Gary Richter (Richter), provided the only evidence properly admitted at trial (see ¶¶ 38-39 below) that could lead the District Court to calculate a thirty-six bushel per acre yield from the unmixed acreage. However, General Mills contends that its expert witness, Dan Roddy (Roddy), wholly discredited Richter's analysis. According to General Mills, either argument leads to the conclusion that the finding of a sixteen bushel per acre loss was not supported by substantial credible evidence.

¶36 There was conflicting testimony regarding the acreage planted and the yield from the mixed and unmixed areas. Hallenberg testified during his case-in-chief that he planted the mixed seed on 320 acres, and he estimated—again during his case-in-chief—that, based on the size of the tanks in his combine, he was harvesting approximately twenty-two bushels per acre from the mixed seed area and thirty-six bushels per acre on the unmixed area. Richter testified that the unmixed acres should have yielded approximately forty bushels per acre. However, Roddy's testimony brought Hallenberg's and Richter's numbers into question.

¶37 "We will not second guess the district court's determination regarding the strength and weight of conflicting testimony." *Double AA Corp. v. Newland & Co.* (1995), 273

11

Mont. 486, 494, 905 P.2d 138, 142; *see also In re M.T.*, ¶ 30. Therefore, we cannot conclude that the District Court's findings that the mixed seed was planted on 320 acres and that Hallenberg suffered a sixteen bushel per acre loss on that land in 1999 were not based on substantial credible evidence. *See Moore v. Beye*, 2005 MT 266, ¶ 8, 329 Mont. 109, ¶ 8, 122 P.3d 1212, ¶ 8 ("Even inherently weak and conflicted evidence may still be considered substantial.").

¶38 **Did the District Court err by allowing Hallenberg to present evidence after he had rested his case-in-chief?**

¶39 General Mills devotes a substantial portion of its briefing to its argument that the District Court improperly admitted certain exhibits, numbered 39 and 40, as rebuttal evidence. General Mills implies that, absent this rebuttal evidence, the District Court's findings regarding the per bushel loss Hallenberg suffered are not supported by substantial credible evidence. We need not address this issue, however, because, as we describe in ¶¶ 34-37 above, Hallenberg's case-in-chief evidence was sufficient to support the District Court's conclusions.

¶40 **Did the District Court err by finding the per bushel value of the lost production to be $3.60?**

¶41 General Mills asserts with minimal citation to the record that Hallenberg provided no basis for the District Court to conclude that the per bushel value for the lost yield was $3.60. However, in testimony at trial, Hallenberg's expert, Richter, explained how he arrived at that value.

12

¶42 Without further articulation from General Mills regarding how and why Hallenberg's asserted value for the lost production fails, we cannot conclude that the District Court erred in its finding. Therefore, we affirm the District Court's ruling on the per bushel value of the lost wheat.

¶43 **Did the District Court abuse its discretion by qualifying Richter as an expert or by awarding prejudgment interest?**

¶44 General Mills makes cursory arguments contending that Richter was not qualified to testify regarding "antagonism or competition" between Fortuna and 936 and that Hallenberg's belated introduction of evidence showing more production than previously asserted demonstrates that he was not entitled to prejudgment interest. These conclusory assertions are presented without cognizable legal analysis.

¶45 "Under Rule 23, M.R.App.P., it is not this Court's obligation to conduct legal research on appellant's behalf, to guess as to his precise position, or to develop legal analysis that may lend support to his position." *In re Estate of Bayers*, 1999 MT 154, ¶ 19, 295 Mont. 89, ¶ 19, 983 P.2d 339, ¶ 19. In the absence of understandable and cogent analysis that supports General Mills' position on these issues, we cannot conclude that the District Court erred with respect to either of them. Therefore, we affirm the District Court's order on these issues.

## CONCLUSION

¶46 The District Court erred by failing to enter a judgment with respect to Hallenberg's crop losses in 2000, including the loss from land that was fallow and

13

allegedly became contaminated by the shelling of the Fortuna seed; the cost of additional seed in 2000; additional loans and interest incurred in 1999, 2000, 2001, and 2002; and tilling, spraying, and labor costs associated with cleaning up the 1999 damage. Therefore, we remand the cause for determination of the damages due, if any, on these matters. In addition, we remand for reconsideration of Hallenberg's punitive damage claim based on actual fraud as defined in § 27-1-221, MCA.

¶47 The District Court correctly concluded that General Mills did not commit actual malice.

¶48 The District Court did not err in its findings regarding the per acre loss and the value per bushel of the lost production. Likewise, the District Court did not err by qualifying Richter as an expert or by awarding prejudgment interest.

¶49 Affirmed in part, reversed in part, and remanded for further proceedings.


/S/ JIM RICE


We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS

14