DA 10-0169

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 231

ROHNN LAMPI,

        Plaintiff and Appellant,

  v.

ALLEN SPEED,

        Defendant and Appellee.

APPEAL FROM:    District Court of the Twenty-Second Judicial District,
In and For the County of Carbon, Cause No. DV 08-17
Honorable Blair Jones, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          L. Randall Bishop (argued), Jarussi & Bishop, Billings, Montana
          Alex Rate, Rate Law Office, Bozeman, Montana

      For Appellee:

          Randall G. Nelson (argued), Nelson & Dahle, P.C., Billings, Montana

      For Amicus:

          Lawrence A. Anderson (argued), Attorney at Law, Great Falls, Montana
          (for Montana Trial Lawyers Association)

                          Argued and Submitted:  February 16, 2011
                                    Decided:  September 14, 2011

Filed:

_____
                       Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     The Twenty-Second Judicial District Court, Carbon County, denied motions for summary judgment and judgment as a matter of law filed by Appellant Rohnn Lampi (Lampi).  Lampi sought an order that restoration damages constituted the appropriate measure of damages for his fire loss claim.  The court also denied Lampi's motion in limine to exclude evidence of diminution in market value of Lampi's property caused by the fire and Lampi's objection to a jury instruction.  We apply *Restatement (Second) of Torts* § 929 as adopted by our decision in *Sunburst School Dist. No. 2 v. Texaco, Inc.*, 2007 MT 183, 338 Mont. 259, 165 P.3d 1079.  We reverse and remand for a new trial.

¶2     We review the following issue on appeal:

¶3     *Whether the District Court wrongly denied Lampi's motions to establish restoration damages as the appropriate measure of damages in his case.*

## FACTUAL AND PROCEDURAL HISTORY

¶4     Lampi owns forty acres of land near Red Lodge, Montana.  Allen Speed (Speed), Lampi's neighbor, admitted liability for negligently dumping ashes that caused a wildfire that burned the trees and vegetation on Lampi's property.  Firefighters saved Lampi's house, but the rest of his property suffered extensive damage from the burn.

¶5     Lampi grew up in Red Lodge and purchased the land for a vacation and retirement home.  He carefully selected his land for its aesthetic beauty and wild setting.  Lampi did not buy the land for investment purposes.  Lampi intends to hand the land down to his children and grandchildren.  Lampi shot his first deer with his father on this property.  Lampi also

2

testified that he intends to take every measure that he can to restore his land back to its pre-fire condition. The fire destroyed 481 pine trees and 687 aspens. Lampi felt particularly fond of the aspen grove directly behind his house that provided shade, privacy, and wildlife viewing.

¶6     Speed admitted liability for negligently burning Lampi's land. The parties could not agree, however, on what constituted fair compensation for Lampi's loss. Lampi's estimated cost to replace the lost trees on his land exceeded the decline in monetary value to his property from the fire. Lampi argued that he should be allowed to recover damages to replace the trees and restore his land because he had no plans ever to sell his land and that the loss in monetary value of the property should be deemed irrelevant to him. Lampi based his claim on our recent decision in *Sunburst School District No. 2*, where we approved a jury award for the plaintiffs' restoration cost that exceeded by seven times the diminution in market value of the affected property.

¶7     Lampi brought this action in district court and sought a jury trial to determine damages. Speed admitted liability, so the jury's only duty consisted of determining the amount of damages that Speed owed Lampi for the harm caused to Lampi's land by the fire. Lampi filed several motions to establish that restoration damages represented the appropriate measure of damages for his claim. The District Court denied the motions and the case proceeded to trial.

¶8     Lampi and Speed presented expert testimony at trial to establish the amount of Lampi's damages. Lampi's expert, Tom Yelvington (Yelvington), testified that it would cost

about $1,050,000 to replant all of the trees and restore the property to pre-fire conditions. Speed's restoration expert, Jim Cancroft (Cancroft), testified that it would cost about $550,000 to replant trees and restore the property to pre-fire conditions. Both Yelvington and Cancroft testified to less expensive restoration options, but the alternative options did not attempt to restore the property to its original condition. Cancroft testified that the vegetation on the property, especially the aspen grove, naturally would restore itself within a reasonable period of time. Speed's property expert, Tom Wicks (Wicks), valued Lampi's property at $646,000 (not including the house). Wicks testified that the property had lost $193,800 in value as a result of the fire.

¶9     The District Court presented the jury with the question of whether the usual diminution in market value or restoration damages to restore the trees constituted the appropriate measure of Lampi's damages. The court first instructed the jury that it could award "the difference in the market value of the property immediately before and immediately after the damage occurred." The court instructed in the alternative that, based on the jury's own consideration of the evidence, it could award reasonable restoration costs with the allowance for natural regeneration "if the jury finds that [diminution in market value] fails to fully compensate the plaintiff." The court overruled Lampi's objection to the instruction. The jury awarded Lampi $250,000. The verdict did not specify whether the jury awarded diminution in market value, restoration damages, or some combination. Lampi appeals.

4

STANDARD OF REVIEW

¶10　This Court reviews de novo a district court's ruling on a summary judgment motion applying the same criteria as the district court pursuant to M. R. Civ. P. 56. *Plains Grains L.P. v. Bd. of Co. Commrs. Cascade Co.*, 2010 MT 155, ¶ 21, 357 Mont. 61, 238 P.3d 332. We also review de novo a district court's ruling on a motion for judgment as a matter of law. *Johnson v. Costco Wholesale*, 2007 MT 43, ¶ 18, 336 Mont. 105, 152 P.3d 727.

¶11　A court may grant summary judgment only if the evidence presented to the court establishes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. M. R. Civ. P. 56. Lampi bears the initial burden of showing that no genuine issues of material fact exist. *PPL Mont., LLC v. State*, 2010 MT 64, ¶ 84, 355 Mont. 402, 229 P.3d 421. Once Lampi has met this burden, Speed must present substantial evidence essential to an element of the case to raise a genuine issue of fact. *Id.*

DISCUSSION

¶12　*Whether the District Court wrongly denied Lampi's motions to establish restoration damages as the appropriate measure of damages in his case.*

¶13　Lampi filed two separate motions for partial summary judgment, one before discovery and one after discovery, on the matter of restoration damages. He argued that restoration damages constituted the appropriate measure of damages under *Sunburst* based on the undisputed facts of this case. The District Court determined that disputed facts existed that precluded it from determining whether Lampi's claim justified restoration damages. Lampi

5

also filed a motion for judgment as a matter of law at the close of trial in which he asked the court to establish the cost of restoration as the appropriate measure of damages. The court denied Lampi's motion.

¶14 The parties present different interpretations of this Court's restoration damages rule adopted in *Sunburst*. Lampi argues that the rule pronounced in *Sunburst* entitled him to restoration damages as a matter of law because he had established (1) that he suffered a temporary injury, (2) that he had "reasons personal" to restore the property, (3) that he genuinely intends to restore the property, and (4) that the cost of restoration is not disproportionate to the pre-tort value of the property.

¶15 Speed counters that the restoration damages rule from *Sunburst* should not extend to Lampi's claim. Speed argues that Lampi's injury—burned vegetation—will naturally restore itself, unlike the toxic contamination in *Sunburst*. Speed suggests that *Sunburst* applies only to cases involving toxic contamination.

¶16 This case presents the Court its first opportunity to interpret and apply *Sunburst* and the restoration damages rule set forth in *Restatement (Second) of Torts* § 929. The Court rejects both Lampi's and Speed's interpretation of the rule. The following sections discuss the Court's adoption of the restoration damages rule in *Sunburst*. We then apply the rule to Lampi's claim.

**I. Sunburst.**

¶17 Montana formerly followed the presumption that diminution in market value constituted the appropriate measure of damages for injury to property. *Burk Ranches, Inc., v.*

6

*State*, 242 Mont. 300, 790 P.2d 443 (1990). The Court always had recognized, however, that no single measure of damages can serve in every case to compensate adequately an injured party. *Burk Ranches*, 242 Mont. at 305, 790 P.2d at 445. Our decision in *Sunburst* officially rejected any one-size-fits-all approach to property damages. A review of the circumstances giving rise to the decision in *Sunburst* to broaden the available remedies in property damages cases provides helpful guidance in resolving Lampi's claim.

¶18    Texaco Inc. (Texaco) operated a gasoline refinery just outside of the town of Sunburst, Montana. The refinery leaked gasoline that contaminated the groundwater and soil in the town of Sunburst. *Sunburst*, ¶ 10. Sunburst residents sought $30 million in damages to restore the property to its pre-tort condition. Texaco objected to an award of restoration damages on the grounds that the cost of remediating the contamination greatly exceeded the market value of the property. The contaminated property had an aggregate market value of approximately $2 million. *Id.* at ¶ 49. The contamination essentially rendered the property valueless.

¶19    The district court instructed the jury to award all costs that "reasonably would be necessary to restore the plaintiffs' property to the condition it would have been absent Texaco's contamination." *Id.* at ¶ 23. The jury awarded $15 million in restoration damages. *Id.* at ¶ 25. Texaco appealed the award on the grounds that restoration damages never can exceed a property's market value. *Id.* at ¶ 29.

¶20    The Court upheld the jury's award of restoration damages. Little incentive would exist for tortfeasors to prevent or remediate contamination, especially in parts of Montana

7

where property values are relatively low, if restoration damages could not exceed a property's market value. *Id.* at ¶ 46. The Court reasoned that limiting Texaco's remediation costs to the pre-tort value of the contaminated property essentially would have provided Texaco with a private right of inverse condemnation. *Id.* We concluded that "statutory and common laws, such as environmental laws" can compel repair or restoration costs in excess of the diminution in market value. *Id.* at ¶ 31. The Court adopted the restoration damages rule from *Restatement (Second) of Torts* § 929 (1979). *Sunburst,* ¶ 36.

## II. Restoration Damages.

¶21 Section 929 and *Sunburst* govern the application of restoration damages in Montana. The law of torts works to ensure that an award of damages restores an injured party as near as possible to the party's pre-tort position—no better, no worse. *Sunburst,* ¶ 31 (citing *Restatement (Second) of Torts* § 901 cmt. a (1979)). The difference between the value of property before and after an injury, or the diminution in market value, may constitute an appropriate measure of damages in property damage cases. *Sunburst,* ¶ 30; *Burk Ranches,* 242 Mont. at 305, 790 P.2d at 445. We recognized in *Sunburst,* however, that diminution in market value will not always correspond with a plaintiff's damages resulting from injury to real property. *Sunburst,* ¶ 37. Certain cases warrant an award of restoration damages in excess of the property's diminution in market value. *Sunburst,* ¶ 29.

¶22 We adopted *Restatement (Second) of Torts* § 929 and comment b in *Sunburst* for the calculation of damages to real property. *Sunburst,* ¶ 36. Section 929 provides in pertinent part:

8

(1) If one is entitled to a judgment for harm to land resulting from a past invasion and not amounting to a total destruction of value, the damages include compensation for
(a) the difference between the value of the land before the harm and the value after the harm, or at his election in an appropriate case, the cost of restoration that has been or may be reasonably incurred[.]

¶23 Under § 929 the plaintiff may elect in an "appropriate case" to seek either the diminution in market value or the cost of reasonable restoration as the plaintiff's measure of damages. *Restatement (Second) of Torts* § 929(1)(a). An "appropriate case" for restoration damages involves temporary damage and reasons personal to the plaintiff to restore property to its former condition. *Restatement (Second) of Torts* § 929 cmt. b.

¶24 The cost of restoring property to its pre-injury condition generally constitutes the appropriate measure of damages for temporary injuries. *Restatement (Second) of Torts* § 929 cmt. b; *Felton Oil Co. v. Gee*, 182 S.W.3d 72, 78 (Ark. 2004). Section 929 imposes a limitation upon this right. The plaintiff must establish reasons personal to restore the property if the cost of replacing the land to its original condition exceeds the diminution in value. *Restatement (Second) of Torts* § 929 cmt. b; *Sunburst*, ¶ 35.

¶25 Speed points out that Lampi's injury—burned vegetation—differs from the injuries in *Sunburst*—toxic contamination. Speed suggests that this distinction allowed the District Court to reject Lampi's motions to establish restoration damages as the appropriate measure of damages in this case. Speed urged the District Court to follow this Court's rule for damages to vegetation established in *Kebschull v. Nott*, 220 Mont. 64, 714 P.2d 993 (1986), instead of *Sunburst* and *Restatement (Second) of Torts* § 929.

9

¶26    We concluded in *Kebschull* that the diminution in market value constituted the appropriate measure of damages for destroyed vegetation from a negligently started fire. *Kebschull*, 220 Mont. at 67, 714 P.2d at 994-95. Speed argued in his summary judgment briefs that Lampi's injury—burned vegetation—did not qualify as the type of injury that the Court contemplated in *Sunburst*. We disagree.

¶27    *Kebschull* relied on the presumption that diminution in market value constituted the appropriate measure of damages in all property cases. *Kebschull*, 220 Mont. at 65, 714 P.2d at 994. Property experts testified that no diminution in market value had occurred and that the plaintiff had not suffered damages as a result. The Court had not yet adopted *Restatement (Second) of Torts* § 929. This Court in *Kebschull* did not consider whether the case involved a temporary injury or whether "reasons personal" existed to support restoration damages. *Kebschull* does not limit a court's ability to award restoration damages to replace Lampi's burned vegetation in light of our decision in *Sunburst* and our adoption of § 929.

¶28    Lampi asks the Court to expand the restoration damages rule in Montana. The majority of courts that have applied § 929, including this Court, have considered whether a jury may award restoration damages in excess of the diminution in market value. *Sunburst*, ¶¶ 28-49. We have concluded that diminution in market value cannot serve as a cap on restoration damages. *Id.* at ¶ 46. Lampi now asks the Court to rule that restoration damages represent the only appropriate measure of damages in certain circumstances.

¶29    Lampi argues that he had presented the court with sufficient evidence before trial to establish that his claim represented an appropriate case only for restoration damages. The

10

restoration damages rule requires plaintiffs to prove two separate elements, rather than the four elements Lampi set forth. Lampi must establish (1) temporary injury and (2) reasons personal in order to establish restoration damages as the appropriate measure of damages in his case. *Sunburst,* ¶¶ 31-39.

¶30 The Court in *Sunburst* also addressed in a separate section whether Sunburst residents would receive a windfall if restoration damages exceeded the diminution in market value. Texaco had complained that nothing required Sunburst residents to use an award of restoration damages actually to restore the property. The Court concluded that Sunburst residents had demonstrated through testimony at trial that they genuinely intended to restore the property. *Id.* at ¶¶ 40-44. Lampi thus reasoned that the restoration damages rule requires him additionally to prove a genuine intent to restore his property as a separate element of the restoration damages rule. Lampi correctly identifies that he must genuinely intend to restore his property in order to satisfy the reasons personal rule.

¶31 *Sunburst* did not create a genuine intent to restore property as a separate element of proof. Neither § 929 of the Restatement, nor the courts that have adopted its reasoning, recognize a genuine intent to restore the property as a separate element of proof. The Restatement and the courts that have addressed this issue instead have analyzed it as part of the reasons personal element. *Osborne v. Hurst*, 947 P.2d 1356, 1359 (Alaska 1997); *Restatement (Second) of Torts* § 929. The reasons personal rule requires plaintiff to establish that the award actually will be used for restoration, and, therefore, subsumes this analysis.

11

We examine in turn whether Lampi presented sufficient evidence of each element to satisfy his claim for restoration damages.

*Temporary Injury.*

¶32    We first must analyze whether Lampi presented the court with sufficient evidence to establish that the burned vegetation qualifies as a temporary injury. *Restatement (Second) of Torts* § 929. An injury qualifies as temporary if the tortfeasor could restore the destroyed property to substantially the condition in which it existed before the injury. *Sunburst*, ¶ 31 (citing *Burk Ranches*, 242 Mont. at 306, 790 P.2d at 447); *Restatement (Second) of Torts* § 929(1); *U.S. v. Denver & Rio Grande W. R.R.*, 547 F.2d 1101, 1104-05 (10th Cir. 1977). An injury that would cease to exist once remediation or restoration has been completed qualifies as temporary. *Felton Oil*, 182 S.W.3d at 78.

¶33    Courts in other jurisdictions have concluded that property damage in the form of damage to trees or a loss of trees can be restored, and, therefore, the injury qualifies as a temporary injury under § 929. *Osborne*, 947 P.2d at 1359 (restoration damages proper after defendant negligently burned property); *Heninger v. Dunn*, 162 Cal. Rptr. 104, 108-09 (Cal. App. 1980) (restoration damages proper after defendants cleared trees for a road on plaintiffs' property); *Huber v. Serpico*, 176 A.2d 805, 813 (N.J. Super. 1962) (restoration damages proper after defendants negligently logged property); *Samson Construction Co. v. Brusowankin*, 147 A.2d 430, 435-37 (Md. 1958) (restoration damages proper after a construction company wrongly cleared trees from plaintiff's property).

12

¶34     The parties appear to agree that the fire caused temporary damage to Lampi's property.  Speed argues that Lampi "temporarily lost the naturally occurring vegetation upon his undeveloped wildland."  Speed opined that the trees eventually would regenerate over time with minimal restoration efforts.  The restoration of Lampi's property to its original condition may take a substantial amount of time, but the parties recognized that the property, nonetheless, eventually could be restored.  This apparent agreement on the temporary nature of the damages comports with the reasoning of other courts on this question.

¶35     For example, the defendant in *Denver & Rio Grande* negligently caused a fire that burned 55 acres of remote government property classified as non-commercial forest land.  *Denver & Rio Grande*, 547 F.2d at 1104.  The fire burned vegetation in forested terrain and along rocky outcroppings in the steep canyon walls of Price Canyon, Utah.  The court classified the damages as temporary even though "restoration of the tract to its original condition by re-establishing destroyed vegetation would be a long process."  *Id.* at 1104-05.

¶36     Application of the *Restatement* leads us to join other courts that have concluded that tree damage generally constitutes a temporary injury because trees can be replanted and restored.  *Restatement (Second) of Torts* § 929(1).  Section 929 allows Lampi to elect restoration damages for his temporary injury.  Whether Lampi's loss qualifies as an "appropriate case" to justify restoration damages in excess of the diminution of market value hinges, however, on whether Lampi presented sufficient evidence of reasons personal to him to restore the property.  *Restatement (Second) of Torts* § 929 cmt. (b); *Sunburst*, ¶ 36.

    *Reasons Personal.*

13

¶37    The reasons personal rule requires Lampi to prove that he possesses a personal reason to restore the damaged property. *Sunburst*, ¶¶ 32, 43; *Osborne*, 947 P.2d at 1359; *Kelly v. CB&I Constructors, Inc.*, 179 Cal. App. 4th 442, 450-51 (Cal. App. 2009). *Sunburst* provided the first opportunity for this Court to apply the reasons personal rule. We also look to other jurisdictions that have adopted § 929 for guidance on the application of the reasons personal rule. *See Bd. of Co. Commrs. Weld Co. v. Slovek*, 723 P.2d 1309, 1314-15 (Colo. 1986); *Roman Catholic Church v. La. Gas*, 618 So. 2d 874, 877 (La. 1993); *Osborne*, 947 P.2d at 1359.

¶38    The plaintiffs in *Sunburst* sought restoration damages after Texaco had contaminated plaintiffs' personal residences and a community with a well-known carcinogen—benzene. *Sunburst*, ¶ 38. We recognized that a plaintiff's desire to enjoy and live in his home represents a typical personal reason to seek repair of the property. *Id.* at ¶ 38 (citing *Slovek*, 723 P.2d at 1314-15). The plaintiffs also had demonstrated that any award would be used to remediate plaintiffs' property. *Id.* at ¶ 43.

¶39    A landowner's motivation for holding property provides guidance as to whether reasons personal exist. Restoration costs generally constitute the most appropriate measure of damages for a plaintiff who demonstrates a desire to continue to use the damaged property instead of selling it. *Sunburst*, ¶ 34 (citing *Roman Catholic Church*, 618 So. 2d at 877); *Osborne*, 947 P.2d at 1359. A restoration award, in contrast, may confer a windfall upon a plaintiff whose only purpose for holding the land is to sell it for profit. *Osborne*, 947 P.2d at

14

1359 (citing Dan B. Dobbs, *Law of Remedies* § 5.2(1), 714-15 (2d ed., West 1993));
*Sunburst*, ¶¶ 40-44.

¶40    Texaco argued that Sunburst residents would receive a windfall if the restoration damages exceeded the diminution in market value as nothing required the residents actually to use the award for restoration. *Sunburst*, ¶¶ 40-44. Several Sunburst residents testified that their primary objective in the case consisted of cleaning up the contaminants in their community. *Id*. at ¶ 44. Texaco failed to contradict the residents' testimony. The uncontroverted evidence established that plaintiffs genuinely intended to restore their property. *Id.* The plaintiffs' reasons personal justified a restoration damages award in excess of the diminution in market value. *Id.* at ¶ 49.

¶41    The plaintiff in *Roman Catholic Church* operated a low-income housing complex that Louisiana Gas negligently had damaged through a fire. *Roman Catholic Church*, 618 So.2d at 875. In *Sunburst* we cited with approval the Louisiana court's conclusion that the plaintiff's desire to provide housing to low income families also constituted a valid personal reason to the plaintiff under § 929 to support restoration damages. *Sunburst*, ¶ 35 (citing *Roman Catholic Church*, 618 So.2d at 880).

¶42    The defendant in *Osborne* negligently had burned trees on the plaintiffs' property. The plaintiffs testified that their property and the trees on their property had noncommercial value to them. *Osborne*, 947 P.2d at 1360. The plaintiffs had selected the property especially because of the wooded character of the property as a place for recreation and as a place to retire. They had no intention of ever selling the property. *Id.*

15

¶43     The trial court granted summary judgment for the defendant in *Osborne* and ruled that diminution in market value represented the sole measure of damages for the lost trees. *Id.* The Alaska Supreme Court reversed and applied the reasons personal rule. *Id.* The court determined that the plaintiffs had demonstrated sufficient evidence of reasons personal to survive a motion for summary judgment. *Id.* The trial court should have presented the question to the jury of whether the plaintiffs had established a personal reason to justify restoration costs to replace the trees and whether the plaintiffs genuinely intended to restore the property. *Id.*

¶44     A trial court should grant summary judgment to establish restoration damages as the appropriate measure of damages if reasonable minds could not differ as to whether a temporary injury and reasons personal exist. *Hill v. Cox,* 41 P.3d 495, 502 (Wash. App. 2002). The trial court in *Hill* determined that the undisputed evidence established that Hill had purchased the property for recreational purposes and that the lost trees provided a visual buffer that enhanced privacy and aesthetic values. *Id.* The trial court properly granted summary judgment that restoration damages constituted the appropriate measure of damages. *Id.*

¶45     Like the plaintiffs in *Osborne* and *Hill*, Lampi argues that he presented sufficient evidence of reasons personal through depositions and affidavits to support his election of restoration damages. *Osborne,* 947 P.2d at 1360. Lampi testified that his property had noncommercial value to him and that he did not intend ever to sell the property. Lampi testified that he had specifically selected this piece of property because of the vegetation on

16

the property and because of his history hunting the land. Lampi testified that he intended to retire on the property.

¶46 Speed did not dispute Lampi's personal desires to restore the property before the District Court. Speed failed to present any evidence to refute Lampi's claim that he had personal reasons to restore his property. Speed conceded to the District Court that he did "not dispute Lampi's stated future plans for the use of his property." Speed placed little import on Lampi's personal reasons to restore the property. Speed's decision to concede this point likely stems from his position that the restoration damages rule should not apply to Lampi's claim for destroyed vegetation. *Supra*, ¶¶ 27-29.

¶47 Speed made a tactical decision to challenge the appropriateness of restoration damages for destroyed vegetation rather than to challenge Lampi's claims regarding the specific elements of restoration damages. This tactical decision left Speed without a response to Lampi's claims. Speed did not present substantial evidence of a material fact to refute whether Lampi had presented sufficient evidence of temporary injuries or reasons personal. *Hill v. Cox,* 41 P.3d at 502.

¶48 We emphasize that these issues normally present factual questions for the jury to resolve. *Osborne*, 947 P.2d at 1360. In this instance, however, Lampi presented undisputed evidence of the temporary nature of the injury and his "reasons personal" for seeking to restore the property. Speed opted not to challenge Lampi's claims on these points and instead argued unsuccessfully that damage to vegetation should not be susceptible to

restoration damages. These unusual circumstances entitled Lampi to judgment as a matter of law on his claim for restoration damages.

¶49 The District Court should have concluded that restoration damages constituted the appropriate measure of damages in this case. *PPL Mont.,* ¶ 84. The District Court failed to inform the parties whether it would apply the restoration damages rule established in *Restatement (Second) of Torts* § 929 to Lampi's case as a result of its indecision regarding the appropriate measure of damages. The court's failure to denote the proper measure of damages shaped the parties' trial strategies and presentations of evidence.

¶50 Lampi further argues that the District Court's refusal to adopt the restoration damages rule as the appropriate measure of damages in his case led to the admission of prejudicial evidence of the alleged diminution in the market value of Lampi's property. The District Court denied Lampi's motion in limine in light of its refusal to adopt restoration damages as the only appropriate measure of damages in Lampi's case. The District Court has not considered whether the alleged diminution in market value of Lampi's property qualifies as relevant evidence if restoration damages constitute the appropriate measure of damages. We decline to address this issue in light of the absence of any decision on the matter from the District Court in this context. *Crail Creek Assocs., LLC v. Olson*, 2008 MT 209, ¶ 35, 344 Mont. 321, 187 P.3d 667. The parties may address this evidentiary issue as needed on remand. We likewise decline to address Lampi's challenge to the District Court's jury instruction for these same reasons.

¶51 We reverse and remand for a new trial to allow the jury to determine what reasonable amount of damages would restore Lampi's property to its pre-fire condition.

/S/ BRIAN MORRIS

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ JIM RICE
/S/ JAMES C. NELSON