Justice Laurie McKinnon delivered the Opinion of the Court.
***125 ¶1 This appeal concerns the distribution of settlement proceeds that arose out of litigation regarding the August 2012 Pine Creek Fire. Pursuant to M. R. App. P. 2(4), we have amended the caption to more accurately reflect the actual alignment and status of the parties.
¶2 Kevin and Courtney Funk, et al. (Funks), along with Scott and Susan Pitman (Pitmans), appeal an order from the Sixth Judicial ***126 District Court, Park County, approving the Special Master's recommendation for allocating the Pine Creek Fire settlement proceeds among the Funks; Pitmans; Ann Wilcox, et al. (Wilcoxes); and four other plaintiffs. We affirm.
¶3 We restate and address the following issue on appeal:
Did the District Court clearly err by adopting the Special Master's factual finding that the Wilcoxes lost 60 acres of forested land during the Pine Creek Fire?
FACTUAL AND PROCEDURAL BACKGROUND
¶4 In August 2012, a forest fire (Pine Creek Fire) broke out near the small community of Pine Creek, ravaging thousands of acres of vegetation and decimating numerous residents' properties. Seeking to recover damages for injuries the Pine Creek Fire caused, the Funks, Pitmans, Wilcoxes, and four other property owners all brought claims against multiple defendants whose negligence, they alleged, ignited the fire.
¶5 The District Court appointed a settlement master and ordered all parties to attend a settlement conference, after which the parties agreed to a settlement. Because the settlement proceeds could not cover all the plaintiffs' damages, the District Court appointed a Special Master, and each of the property owners-including the Funks, Pitmans, and Wilcoxes-agreed to submit allocation of the settlement proceeds to him.
¶6 The Special Master received information and exhibits in support of each plaintiff's claims for damages. Certified arborist Tom Yelvington (Yelvington) assisted many of the *196 plaintiffs by estimating the cost to restore the burned vegetation on their properties. Yelvington calculated these restoration costs by determining the costs to remove burned trees and vegetation, purchase replacement trees and vegetation, transport and plant the replacement trees and vegetation, and water and care for the trees and vegetation to ensure their survival. Because many plaintiffs lost hundreds-and sometimes thousands-of trees to the Pine Creek Fire, restoration damages often made up the majority of their total damages claims. The Special Master remarked that the sizable restoration damages claims substantially drove his apportionment of the limited settlement funds.
¶7 The Wilcoxes submitted information to the Special Master that the Pine Creek Fire burned 60 acres of forested land-over 18,500 trees-on their 104 acres of property. Yelvington counted burned trees in two scorched acres representative of the average tree density throughout the Wilcoxes' property. Using the average count of burned ***127 trees between the two acres, Yelvington multiplied the average count with the Wilcoxes' estimate that they lost 60 acres of forested land. Thus, Yelvington calculated the Wilcoxes lost over 18,500 trees. Yelvington then used this value to estimate the cost to restore the trees on the Wilcoxes' property as $21,612,938. After reviewing the Wilcoxes' total claims for damages, the Special Master found the Wilcoxes were entitled to a total of $21,734,605 in damages.
¶8 The Pitmans own a 10.5-acre property. They submitted information that the Pine Creek Fire destroyed extensive vegetation on their property, numerous personal items, and a barn containing an art studio. Applying the same methodology, Yelvington estimated the cost to restore the trees on the Pitmans' property to be $612,258. After reviewing the Pitmans' total claims, the Special Master found the Pitmans were entitled to $1,074,908 in damages.
¶9 The Funks own an 18.6-acre property. The information they submitted demonstrated the Pine Creek Fire destroyed business equipment, numerous outbuildings and vehicles, and extensive vegetation. Yelvington did not personally inspect the Funks' property like he had the other plaintiffs', but he used photographs from the Funks, comparable data from neighboring properties (including the Wilcoxes), and the same methodology he used with other properties to estimate the cost to replace the coniferous trees on the Funks' property to be $5,905,749. Thomas Ryan, another vegetation expert, estimated the cost to replace the non-coniferous plants on the Funks' property to be $1,475,500. Together, these figures represented a claim for $7,381,249 in restoration damages. The Special Master expressed concern that, because neither Yelvington, Thomas Ryan, nor any other expert had physically visited the Funks' property, the proof submitted by the Funks in support of their restoration damages was "not on a par" with that submitted by other plaintiffs. Notwithstanding, the Special Master accepted the estimates from Yelvington and Ryan and found the Funks were entitled to $7,706,171 in total damages.
¶10 The Special Master found the total value of all the plaintiffs' damages to be over $32 million. The total value of restoration damages was just under $31 million, making up the lion's share of the overall value-nearly 95%. Of the total settlement funds, the Special Master awarded approximately 66% to the Wilcoxes, 24% to the Funks, and 3% to the Pitmans.
¶11 The Funks and Pitmans separately objected to the Special Master's recommendation in the District Court. They both claimed the Special Master erred by overvaluing the Wilcoxes' claim for restoration damages, which was based on Yelvington's assessment and the ***128 Wilcoxes' assertion that they lost 60 forested acres in the fire. In support of their objections, they included an affidavit from Bernard Hallin (Hallin), a professional land surveyor who researched the Wilcoxes' property using Google Earth imaging tools-a common and accurate application used in the surveying field-and concluded the Wilcoxes lost only 22.8 acres of mature pine forest. In response, the Wilcoxes questioned the accuracy of Hallin's Google Earth images and research. They supplied tax assessment records indicating they owned approximately 63 acres of marketable timber. Further, John Wilcox, Ann Wilcox, *197 and John Melin (Melin), an individual helping the Wilcoxes clear dead trees from their property, each supplied an affidavit stating that the Wilcoxes lost approximately 60 acres of forested land in the Pine Creek Fire. The District Court ordered further review of the issue, and the Special Master held an evidentiary hearing.
¶12 Hallin testified on behalf of the Funks and Pitmans. Hallin disagreed with the Wilcoxes' assessment that the Pine Creek Fire burned 60 acres of forested land on their property. Using Google Earth images, he outlined a clearly decimated portion of the Wilcoxes' property and calculated it contained 22.8 acres, which he found were the only acres that burned. However, on cross-examination, Hallin testified his estimate only included burned, mature coniferous trees that were completely decimated by the fire-trees he considered "merchantable timber." He stated, "I was only looking at mature coniferous forest that was ... marketable timber that was decimated." He did not include other species of trees like cottonwoods; smaller, immature coniferous trees; still-living, fire-damaged trees that would die within the next few years; or fire-damaged and dead trees interspersed with healthy trees on other parts of the property.
¶13 Yelvington testified on behalf of the Wilcoxes and reaffirmed his earlier methods of estimating the total burned trees on the Wilcoxes' property. In his calculation of burned acreage, Yelvington included coniferous and non-coniferous trees; trees that were completely decimated or dead because of the fire; trees that would die within one to five years because of the fire; and immature trees with at least a diameter of one or more inches. He stated some trees had severely burned trunks and would eventually die as a result of the fire, yet many of their upper branches still appeared green. He further testified a Google Earth aerial image of these severely damaged trees would incorrectly show they were alive and healthy.
¶14 John Wilcox affirmed that he had almost forty years of experience with the property. He testified that the Google Earth images Hallin ***129 used to estimate the burned acres of mature coniferous trees omitted large sections of the property. Referring to the portions of the property the Google Earth images did show, John outlined large groups of trees that had since died because of fire damage even though Hallin considered them alive based on the aerial images. He agreed the tax assessment indicated the property had around 63 acres of marketable timber, but he estimated the property contained between 75 and 80 acres of total tree coverage. He estimated the fire damaged 80% of that total-around 60 acres-stating, "the place looked like the moon after the fire."
¶15 Ann Wilcox also testified that while the tax assessment indicated about 63 acres of marketable timber on her property, she estimated there was about 80 acres of total tree coverage. Ann reviewed several photographs she and John took of sections of the property with burned trees that Hallin failed to include in his estimate of burned acreage based on the Google Earth images. She explained that many trees in the photographs had severely burned trunks but still appeared green on top. She testified that when looking at the treetops from above, it appeared as though some otherwise fire-damaged trees were green and healthy, but "when you walk it, get on the ground, this is what you see, there are green trees in there, but there [are] a lot of dead ones everywhere."
¶16 Finally, Melin, who had been clearing dead trees from the Wilcoxes' property since the Pine Creek Fire, testified. Melin stated he was familiar with determining acreage and using surveys because of his experience with ranching, fencing, and construction. On cross-examination, Melin testified that while he had not counted individual trees removed or remaining on the property, he believed he had removed more trees than were left and that many burned trees remained. He further testified the Wilcoxes lost 60 total forested acres to the Pine Creek Fire.
¶17 The Special Master issued a supplemental report upholding his prior recommendations to the District Court for dividing the settlement proceeds among the plaintiffs. While the Special Master maintained Hallin was a highly qualified land surveyor, he *198 found Hallin underestimated the extent the Pine Creek Fire damaged the trees on the Wilcoxes' property. The Special Master found: (1) Hallin improperly limited the scope of his review to mature and marketable timber whereas Yelvington's approach included burned trees with diameters as small as one to four inches; (2) Hallin failed to include non-coniferous trees like cottonwoods in his analysis; and (3) Hallin did not include trees that were dead or dying but not wholly decimated on ***130 other parts of the property. The Special Master found Hallin's limited analysis underestimated the full restoration cost for the Wilcoxes' property while Yelvington's approach analyzed all trees, regardless of species, size, or level of damage. Further, he noted the Wilcoxes' familiarity with their property and their testimonial, photographic, and documentary evidence in support of their claim that they lost 60 acres of forested land during the Pine Creek Fire. Therefore, the Special Master found the Funks and Pitmans failed to show he incorrectly used the Wilcoxes' 60-acre figure and Yelvington's calculations when determining the Wilcoxes' restoration damages.
¶18 The Funks and Pitmans objected to the Special Master's supplemental report in District Court. The District Court held a hearing and heard oral argument about their objections. The District Court held the Special Master correctly interpreted the law for restoration damages and his findings were not clearly erroneous. The District Court denied the Funks' and Pitmans' objections and adopted the Special Master's recommendations for allocating the settlement funds. The Funks and Pitmans appealed.
STANDARD OF REVIEW
¶19 We apply the same standard of review to an adopted special master's report that we do to any other district court order. Maloney v. Home & Inv. Ctr., Inc. , 2000 MT 34, ¶ 28, 298 Mont. 213, 994 P.2d 1124. We review de novo whether a district court applied the correct standard of review to a special master's findings of fact and conclusions of law. Maloney , ¶¶ 28-29. The district court must review the special master's conclusions of law to determine whether they are correct. In re Eldorado Coop Canal Co. , 2016 MT 94, ¶ 16, 383 Mont. 205, 369 P.3d 1034. Under M. R. Civ. P. 53(e)(2), in non-jury actions, "the [district] court must accept the master's findings of fact unless clearly erroneous."
¶20 A factual finding is clearly erroneous: (1) if it is not supported by substantial evidence; (2) if the trier of fact misapprehended the effect of the evidence; or (3) if we are left with a definite and firm conviction that a mistake has been made in light of the evidence as a whole. Eldorado Coop Canal Co. , ¶ 17. "Substantial evidence is evidence which a reasonable mind might accept as adequate to support a conclusion, even if the evidence is weak or conflicting. It need not amount to a preponderance of the evidence, but it must be more than a scintilla." Skelton Ranch, Inc. v. Pondera Cty. Canal & Reservoir Co. , 2014 MT 167, ¶ 27, 375 Mont. 327, 328 P.3d 644.
***131 DISCUSSION
¶21 Preliminarily, we clarify the proper measure of restoration damages.[1] Hallin testified multiple times he was looking only at burned marketable timber when reaching his 22.8-acre estimate. On appeal, the Funks and Pitmans have similarly stated the Wilcoxes failed to provide substantial evidence that they lost "60 acres of mature coniferous pine forest in the fire." (Emphasis added.) However, Montana law does not limit restoration damages to replacing marketable timber: "The cost of restoring property to its pre-injury condition generally constitutes the appropriate measure of damages for temporary injuries." Lampi v. Speed , 2011 MT 231, ¶ 24, 362 Mont. 122, 261 P.3d 1000.
¶22 In Lampi , a case that also involved restoration damages for a negligently-ignited forest fire, we did not limit restoration damages to Lampi's coniferous trees, his marketable or merchantable timber, or his decimated trees alone. Instead, we held the fact finder must determine "what reasonable *199 amount of damages would restore Lampi 's property to its pre-fire condition ." Lampi , ¶ 51 (emphasis added). Neither do we similarly limit the Wilcoxes' damages here: the Wilcoxes are entitled to damages to restore their property to its pre-fire condition. Those damages encompass the costs to restore all trees damaged or decimated by the Pine Creek Fire, including immature, nonmarketable, and non-coniferous fire-damaged trees.
¶23 We turn now to the Funks' and Pitmans' contention that the District Court clearly erred by adopting the Special Master's reports, recommendations, and findings. The Funks and Pitmans do not appear to dispute Yelvington's method of calculating total trees needing replacement. Instead, they disagree with one of Yelvington's inputs-the 60 acres of burned trees the Wilcoxes provided. They argue the Special Master speculated about the acreage because the Wilcoxes "did not provide any substantial evidence to support their claim that they lost 60 acres of mature coniferous pine forest." Instead, they argue substantial evidence supports their view that the Wilcoxes actually lost 22.8 acres of coniferous timber.
¶24 The Wilcoxes counter that Hallin's 22.8-acre estimate omitted numerous burned trees that he should have included because he limited his estimate to decimated, marketable, mature coniferous timber. They also contend they corroborated their 60-acre estimate with supporting documentary and testimonial evidence, including tax ***132 assessment records, deeds, photographs depicting burned areas of their property not included in Hallin's estimate, and testimony from John Wilcox, Ann Wilcox, and John Melin.
¶25 "[S]ubstantial evidence that is not mere guess or speculation" must support a judgment for damages. In re Marriage of Mease , 2004 MT 59, ¶ 42, 320 Mont. 229, 92 P.3d 1148. However, the law does not require mathematical precision: we will not deny recovery of damages, even if a party challenges their mathematical precision, "provided the evidence is sufficient to afford a reasonable basis for determining the specific amount awarded." Mont. Petroleum Tank Release Comp. Bd. v. Crumleys, Inc. , 2008 MT 2, ¶ 92, 341 Mont. 33, 174 P.3d 948 (quoting Hallenberg v. General Mills Operations, Inc. , 2006 MT 191, ¶ 32, 333 Mont. 143, 141 P.3d 1216 ).
¶26 The Wilcoxes provided substantial evidence to support their claim that the Pine Creek Fire burned 60 acres of their forested land. In support of their assertion, they provided documentary, photographic, and testimonial evidence. John and Ann Wilcox both testified to having many decades' experience and familiarity with the property. They provided photographs of burned trees from areas of the property that Hallin did not include in his 22.8-acre estimate. They introduced a property tax assessment that indicated the property contained about 63 acres of marketable timber, and they testified that the property contained between 75 and 80 acres of both marketable and nonmarketable trees-of which, they estimated the Pine Creek Fire burned 80%, or about 60 acres. The Wilcoxes also provided testimony from Melin, who was familiar with determining acreage, using surveys, and assessing property boundaries. By the date of the parties' evidentiary hearing, Melin had spent multiple years clearing debris and becoming familiar with the Wilcoxes' property. He also testified he believed the Wilcoxes lost 60 acres of forested land to the Pine Creek Fire.
¶27 The Funks and Pitmans point to Mease to bolster their argument that the Wilcoxes' damages are speculative. In Mease , we stated "[p]roof of damages must consist of a reasonable basis for computation and the best evidence obtainable under the circumstances which will enable a judge to arrive at a reasonably close estimate of the loss." Mease , ¶ 42. There, the petitioner, without documentation to prove his claim, "simply testified that he suffered approximately $1,700 in damage to his credit when he took out two car loans." Mease , ¶ 42. We held the petitioner's claim was speculative because the petitioner himself said the value was approximate and he could have easily produced documentation of the damage to his credit. Mease , ¶ 42.
***133 ¶28 Unlike Mease , documentation of the Wilcoxes' burned acreage was difficult to produce. Due to the nature and extent of the *200 Pine Creek Fire, expecting the Wilcoxes to count and document every individual burned tree on over one hundred acres of property would be onerous. The Wilcoxes instead hired an expert arborist who used thorough on-site appraisal procedures-widely accepted in his field-to evaluate the cost to restore the Wilcoxes' property. The Wilcoxes were intimately familiar with the property itself, and they provided corroborating documentary, photographic, and testimonial evidence to prove the size of their property, the acres of trees on it, and the burned acreage they lost.
¶29 The Funks and Pitmans assert Hallin's 22.8-acre estimate proves the Wilcoxes' estimate is unsupported by substantial evidence, yet the Wilcoxes showed Hallin's estimate contains several irregularities. Most prominently, Hallin only included mature, marketable coniferous timber in his calculation. Even so, the Funks and Pitmans were free to challenge the Wilcoxes' claimed damages with evidence of their own-which they did-but conflicting evidence does not establish clear error. See Anderson v. Deafenbaugh (In re G.J.A.) , 2014 MT 215, ¶ 23, 376 Mont. 212, 331 P.3d 835 ; Skelton Ranch, Inc. , ¶ 27. "When a reader reasonably can deduce two or more inferences from the facts, the reviewing court lacks power to substitute its deductions for those of the finder of fact." Anderson , ¶ 23 (quoting Weinheimer Ranch v. Pospisil , 2013 MT 87, ¶ 19, 369 Mont. 419, 299 P.3d 327 ). Ultimately, only the fact finder measures credibility and assigns weight to evidence. The Special Master found the Wilcoxes' evidence to be more reliable, a finding of fact we conclude substantial evidence supports.
¶30 Furthermore, we do not hold the Special Master misapprehended the effect of the Wilcoxes' evidence. Yelvington certainly tied his restoration damages estimate to the Wilcoxes' 60-acre estimate, but substantial evidence supports the Wilcoxes' estimate. We cannot conclude the Special Master misapprehended the evidence merely by his finding one party's evidence more persuasive than the other's. The Special Master also notably relied on the same expert arborist and the same method for calculating restoration damages when he evaluated both the Funks' and Pitmans' claims. Across each of these claims, the evidence was similar and its effect nearly the same.
¶31 Finally, in light of the evidence as a whole, we are not left with a definite and firm conviction that the Special Master made a mistake. The Wilcoxes provided substantial evidence supporting their claim for restoration damages, the Special Master approached each plaintiff's ***134 claim using the same methods and evaluation, and the Funks' and Pitmans' alternative estimate of the Wilcoxes' burned acreage fails to include many damaged trees that a court should otherwise include in a claim for restoration damages. The Special Master did not clearly err by finding the Wilcoxes lost 60 acres of forested land to the Pine Creek Fire.
CONCLUSION
¶32 The Special Master correctly sought to find the cost to restore the Wilcoxes' property to its pre-injury condition, not simply the cost to replace their marketable timber. Likewise, substantial evidence supports the Wilcoxes' claim for damages. The Special Master did not commit a clear error, even in light of conflicting evidence, by finding the Wilcoxes lost 60 acres of forested land during the Pine Creek Fire. The District Court correctly upheld the Standing Master's legal conclusions and factual findings. Accordingly, we affirm.
We concur:
MIKE McGRATH, C.J.
INGRID GUSTAFSON, J.
BETH BAKER, J.
JIM RICE, J.

The parties do not dispute whether the Wilcoxes are entitled to restoration damages. Instead, they dispute the restoration damages' value.